211 P.2d 455

STATE v. SERNA.

No. 987.

Supreme Court of Arizona.

Nov. 21, 1949.

L. Alton Riggs, of Tempe, attorney for appellant.

Fred O. Wilson, Attorney General, Joseph Pyle Ralston, Assistant Attorney General, F. Preston Sult, County Attorney of Pinal County, Florence, Robert Murlless, Deputy County Attorney, Pinal County, of Florence, attorneys for appellee.

STANFORD, Justice.

An information was filed in the Superior Court charging defendant with the crime of the murder of one Catherine Gohn on or about the 29th day of December, 1947. The defendant, a Mexican laborer, worked at the Superstition Service Station several months prior to said date. Said service station is located about one mile in a southeasterly direction from Apache Junction on U. S. Highway Nos. 60-70. On Sundays defendant served as a jockey at the

Apache Junction Race Track. On Monday, the 29th day of December, defendant failed to report for work, but stayed at the Apache Junction Cafe during the morning and early part of the afternoon. The evidence shows he drank some beer during that time and attempted to purchase from the bartender, Fred Morrison, a certain race horse. Morrison offered to sell the horse for the sum of $400. The evidence further shows that defendant went to see his employer, S. R. Oldham, at the Superstitution Service Station in an attempt to get the money with which to purchase the horse, but failed to procure it. About 3 P.M. on said date defendant appeared at Thompson's Service Station and Cafe, located approximately one half mile west of Apache Junction on the main highway to Phoenix. He purchased a cup of coffee, drinking only a portion of it, then left, returning within a few minutes after another customer, who was in the cafe, had gone, and sat down at his place at the counter. Presently he arose and pulled his gun with his left hand and motioned to the proprietress, Mrs. Fairy Thompson and her two daughters to go into a small room. He then said "This is a stick up", but Mrs. Thompson told him that he was kidding and he said "No, I mean it, put your hands up", which she did. Mrs. Thompson then said that he grinned and pulled the trigger. The bullet from a 38 caliber pistol struck her in the breast and she ran out the back way with her daughters and started in the direction of Apache Junction, but she was picked up by a passing motorist and taken to the Mesa Hospital. Her two daughters continued to Apache Junction and reported the shooting.

At about 4:30 P.M. the same day defendant appeared at King's Ranch, about ten miles east of Apache Junction, and asked Paul Marchand, a cowboy acquaintance, to drive him to Safford, Arizona. Defendant stated to Marchand that he had just shot two women. Marchand testified that because he saw a pistol in defendant's hand, he told him he would take him to Safford. He told defendant to go down the road and drive his car into the bushes and wait there and that he would pick him up as soon as he was through watering some sick horses; that defendant drove away in the car; Marchand finished watering the horses and went to the ranch house and got a rifle and with Mrs. King, his employer, drove to the highway. As they reached a place called Sand Tanks, being east of Apache Junction, they contacted the officers in a police car coming from the direction of Apache Junction. The two cars stopped at the Sand Tanks Station and he advised the officers of defendant's whereabouts. Leaving Mrs. King at Sand Tanks he went with the officers to apprehend defendant. As they approached the place where defendant was instructed to hide they found that he had already been captured by officer Earl Parrish, who was with other officers.

When captured defendant had on his person a wallet containing approximately $30, and a camera, both of which belonged to the deceased Catherine Gohn, and a 38

caliber H & R revolver. The officers also determined that the automobile in which he had been riding was the property of Mrs. Gohn. The officers then went to the Gohn home, which was located a few hundred yards to the rear of Thompson's Service Station. There they found evidence of a violent struggle and blood stains throughout the house. On a bed they found the body of Catherine Gohn.

From investigation and an autopsy it was found that deceased had been beaten with a sharp object which could have been the barrel of a revolver, and that she had been shot. A ballistics expert testified that the bullet taken from deceased's body and the bullet embedded in the wood of Thompson's Service Station were in all probability fired from the revolver which defendant had in his possession when apprehended.

The case was tried in Florence, Pinal County, Arizona. A verdict of guilty of the crime of murder of the first degree and fixing the penalty at death was rendered, and the judgment and sentence of the court was that the defendant was adjudged guilty of the crime of murder of the first degree and that he be punished by infliction of the death penalty.

Notice of appeal to this court was given from the judgment of conviction and sentence, and from the order denying defendant's motion for new trial.

The defendant has presented six assignments of error of the trial court which he is asking this court to review. Also he has submitted several propositions of law, but a fair review of all of the questions submitted can be determined by the assignments of error, which are as follows:

"1. The Court erred in permitting two witnesses to testify over objection of the defendant, whose names were not endorsed on the original information, but whose names were indorsed on an amended list, which said list, was not served upon the defendant until 9:30 O'clock of the morning of the trial, which was just a few minutes prior to the time that the case was to be heard on its merits.

"2. The Court erred in admitting evidence of another offense than that with which the defendant was charged, particularly the shooting of Mrs. Thompson, over the objections of the defendant, whereby defendant was prejudiced, and thereby deprived of a fair and impartial trial. This is especially true when considered with the instruction given by the Court as to when evidence of other crimes may be admitted, and for what purposes they were to be considered.

"3. The Court erred in not granting the defendant his motion for a new trial, because of the misconduct of the County Attorneys', particularly in the closing arguments wherein each of them commented on the fact that the defendant did not take the stand.

"4. The Court erred in its failure on its own motion to instruct the jury that the fact that the defendant did not take the

stand should not and could not be held against him, particularly in view of the statements made by each of the county attorney's in their closing arguments.

"5. The Court erred in its instruction to the jury wherein it attempted to define First Degree Murder.

"6. The Court erred in denying defendants motion for a new trial for the reasons stated in defendants motion for a new trial, on file herein."

The first assignment of error is based upon Section 44-759, Arizona Code Annotated 1939, which reads:

"When an indictment or information is filed, the names of all the witnesses or deponents on whose evidence the indictment or information was based shall be indorsed thereon before it is presented, and the county attorney shall indorse on the indictment or information at such time as the court may by rule or otherwise prescribe the names of such other witnesses as he purposes to call. A failure to so indorse the said names shall not affect the validity or sufficiency of the indictment or information, but the court in which the indictment or information was filed shall, upon application of the defendant, direct the names of such witnesses to be indorsed. No continuance shall be allowed because of the failure to indorse any of the said names unless such application was made at the earliest opportunity and then only if a continuance is necessary in the interest of justice."

The assignment of error was that the court erred in permitting two witnesses to testify whose names were not indorsed on the original information. No point is made in this case that the information was founded on the testimony of witnesses who did not testify. The point argued by appellant is that Section 44-759 requires the county attorney to indorse on the indictment or information the witnesses he proposes to call. In this regard we quote from our case of State v. King, 66 Ariz. 42, 182 P.2d 915, 919:

" * * * The purport and intention of these rules is to enable one accused of crime to prepare adequately and advisedly for his defense. They are not meant to provide an avenue of escape. The defendant not having asked for a continuance, it is difficult to discern wherein he was prejudiced by the order of the court permitting the witness to testify." See also State v. Cassady, 67 Ariz. 48, 190 P.2d 501.

There was no request for a continuance of the case by the defendant in order to ascertain what these two new witnesses knew about the case. The court, on its own motion, offered to recess the trial until defendant could inform himself as to what said witnesses would testify to. The defendant declined to accept the offer. We, therefore, see no merit to the assignment set forth by defendant on this subject.

Neither do we find any merit to defendant's second assignment of error. It

is the general rule that evidence of other crimes is inadmissible to prove the specific crime charged, but there are exceptions to the rule that are equally as well settled as the rule itself.

From 20 Am.Jur., Evidence, Section 312, under the heading of "Identification of Accused by Proof of Other Crimes", we quote:

"The general rule that evidence of separate and independent crimes is inadmissible to prove the guilt of a person upon trial for a criminal offense is subject to a well-defined exception with respect to proof of the identity of the accused. The broad rule is that where evidence tends to aid in identifying the accused as the person who committed the particular crime under investigation, it is admissible, in spite of the fact that it tends to show that the accused is guilty of other crimes for which he is not on trial. This rule is applied in a wide variety of cases, such as arson, burglary, homicide, larceny, liquor law violations, robbery, and many other instances. * *" See also 20 Am.Jur., Evidence, Section 310.

This court said in Lawrence v. State, 29 Ariz. 247, 240 P. 863, 867:

"* * * It is, of course, the general rule that no evidence can be introduced against the defendant on trial for a specified offense of any other crime than that charged in the information upon which he is tried. Citations are unnecessary so far as the general principle is concerned. It is equally established, however, that there are certain well-known exceptions to the rule.

In Crowell v. State, 15 Ariz. 66, 136 P. 279, we discuss the general rule, and hold that among these exceptions are:

"'(1) Motive, e. g., the commission of one crime to suppress evidence of another crime.'

"'(5) The identity of the person charged with the commission of the crime on trial, e. g., that the defendant charged with murder used stolen tools to enter house and shot the victim with a pistol stolen from another house. * * *'" See also State v. Singleton, 66 Ariz. 49, 182 P.2d 920.

The court's instruction complained of in this assignment of error appears to have been requested by defendant and certainly he may not now be heard to question its propriety. Sisson v. State, 16 Ariz. 170, 141 P. 713; Lee v. State, 27 Ariz. 52, 229 P. 939; Loveland v. State, 53 Ariz. 131, 86 P.2d 942.

Defendant's third and fourth assignments of error are based upon the following language of counsel for the state in his closing argument to the jury, "and the defendant Serna sits right over there and has not only shown no acknowledgment of what has happened, he has not even shown a minute's remorse in two days." Defendant claims this is a comment on defendant's failure to take the witness stand in his own behalf. Section 44-2704, A.C.A.1939, provides:

"Defendant as a witness—May not comment on his failure to testify.—A defendant in a criminal action or proceeding can

not be compelled to be a witness against himself, but may be a witness in his own behalf; but if he offers himself as a witness in his own behalf, he may be cross-examined to the same extent and subject to the same rules as any other witness. His neglect or refusal to be a witness in his own behalf can not in any manner prejudice him, nor be used against him on the trial or proceedings."

Under this statute comments may not be made upon failure of defendant to take witness stand and if this comment is so construed it is reversible error, but we do not believe the language complained of can be fairly said to amount to a comment prohibited by the statute.

The defendant's fifth assignment of error goes to the instruction given by the court in defining first degree murder, and in particular the deliberation and premeditation that is required. Defendant challenges an instruction which is the stock instruction of superior courts of this state on the subject of murder, a portion of same being,

"The unlawful killing if any must be accomplished with a deliberate and clear intention to take life in order to constitute murder of the first degree, except when committed in the attempt to perpetrate, or in the perpetration of arson, rape, robbery, burglary or mayhem, as herein instructed. The intention to kill must be the result of deliberate premeditation. There need, however, be no appreciable space of time between the intention to kill unlawfully and the act of killing. * * *"

Defendant contends that in view of the decision of this court in the case of Moore v. State, 65 Ariz. 70, 174 P.2d 282, in the instant case the court failed to properly define deliberation and premeditation in giving its instruction on first degree murder wherein it quoted from a case of the People v. Bender, 27 Cal.2d 164, 163 P.2d 8.

We first call attention to the fact that when the trial court finished giving the instructions it stated; "Are there any additions or omissions?" to which the state's attorney replied, "No, Your Honor." Mr. Riggs (attorney for defendant) replied: "You probably did read it, but I missed this No. 10." The court then proceeded to read what Mr. Riggs designated as No. 10, after first saying, however, "I read it."

The main question for us to determine at this time is whether or not the instruction given on "premeditation" and "deliberation" could have in any way prejudiced this defendant. This was a case of murder in the commission of a robbery. The evidence showed that the camera, wallet and car in the defendant's possession when he was captured were the property of deceased. Every element of the crime went to show that robbery was the purpose of the commission of this offense. Under the circumstances the jury did not need to consider the element of deliberation and premeditation in arriving at a verdict, as

188

given, of murder of the first degree. 26 Am.Jur., Homicide, Sec. 277; State v. King, 24 Utah 482, 68 P. 418, 91 Am.St. Rep. 808; Burgunder v. State, 55 Ariz. 411, 103 P.2d 256.

The rule is succinctly put in the Utah case of State v. King, supra [24 Utah 482, 68 P. 420], where it is said:

" * * * The attempt to perpetrate the crime of robbery, or any other felony named in the statute, during which a homicide is committed, takes the place of and amounts to the legal equivalent of such deliberation, premeditation, and design, which were otherwise necessary attributes of murder in the first degree. * * *"

From all of the evidence adduced there could have been no other reasonable theory advanced for the killing of Mrs. Gohn than that of the commission of the crime of robbery. The defendant had attemped to purchase a race horse from Mr. Morrison at Apache Junction. He then went to his employer at the Superstition Service Station and attempted to borrow money. Then finally he was found in possession of the camera, wallet and car of Mrs. Gohn, and all circumstances tended to prove that he had killed her and the evidence showed, as the facts heretofore have stated, that the bullet out of his weapon, a 38 revolver, was the kind that was found in the body of Mrs. Gohn. Under these circumstances we see no merit to defendant's fifth assignment of error.

Our disposition of the previous assignments of error disposes of the assignment of error complaining of the court's ruling in denying defendant's motion for a new trial.

We have carefully reviewed the evidence and the case as a whole, and find no error committed in the trial of the cause that was prejudicial to the rights of this defendant. He was ably represented and had a fair and impartial trial.

Judgment is affirmed.

LA PRADE, C. J., and UDALL, PHELPS and DE CONCINI, JJ., concurring.