291 P.2d 786

STATE of Arizona, Appellee,

v.

H. T. BOOZER, Appellant.

No. 1076.

Supreme Court of Arizona.

Dec. 13, 1955.

F. Preston Sult, Eloy, Lewis, Roca, Scoville & Beauchamp and John P. Frank, Phoenix, for appellant.

Robert Morrison, Atty. Gen., H. B. Daniels, Asst. Atty. Gen., and T. J. Mahoney, County Atty. of Pinal County, Florence, for appellee.

UDALL, Justice.

This is an appeal by Dr. H. T. Boozer (defendant-appellant) from a judgment of conviction of the crime of abortion, being in violation of Section 43–301, A.C.A.1939. The defendant, a medical practitioner in the town of Superior, was charged by the county attorney of Pinal County with having unlawfully procured the miscarriage of one Dora Jean Williams in June, 1954. The jury returned a verdict of guilty, a motion for new trial was duly made and denied, judgment of conviction was entered. and this appeal followed.

Taking the evidence as a whole, construed in a light most favorable to the state, the jury was fully justified in finding that Dora Jean Williams, accompanied by her

husband, came to defendant for the purpose of procuring a criminal abortion, this without any regard to whether she needed it for the sake of her health. She and her husband both testified that they had learned from others that Dr. Boozer would perform such an operation, and that Mrs. Williams was in good health when they went to Superior the latter part of June, 1954, to learn if defendant would perform an abortion upon her, and that such an operation was in no wise necessary to save her life. They stated the step was taken to avoid the shame and disgrace of a pregnancy incurred prior to marriage and also for financial reasons. Dr. DePinto, a Phoenix obstetrician, testified that when he first examined Mrs. Williams on April 2, 1954 (before her marriage), he found her to be pregnant. Six weeks later, as a married woman, she returned for another examination and he found a normal two and one-half months pregnancy to exist with no indication of any complications. The defendant, upon taking the witness stand, admitted that he had procured the miscarriage of Dora Jean Williams—for a cash fee of $300 payable in advance—but contended that the operation was performed because of her physical condition. Specifically he stated that the mouth of the womb was considerably inflamed and that " * * * amniotic fluid was oozing out * * * " hence he felt a miscarriage was inevitable and it was imperative to remove the contents of the womb to avoid the danger of infection that might possibly be fatal to the mother. He asserted it was with this intent that he performed the operation. By its verdict it obviously appears the jury disbelieved the defendant.

There are three assignments of error presented and a number of supporting propositions of law. We shall state and consider these assignments in such order as seems best.

We find no merit in defendant's first assignment relative to the alleged "general unfairness permeating the record". Four examples of this so-called unfairness are cited us which we shall treat briefly. Defendant decries the excessive use of repulsive exhibits, specifically the fetus, placenta and blood clots passed by Mrs. Williams at a Phoenix hospital where she miscarried as a result of the operation previously performed by defendant upon her person. We are cited to the case of Hightower v. State, 62 Ariz. 351, 356, 158 P.2d 156, wherein this court laid down the rule that the state need not prove the removal of the fetus as part of the corpus delicti of the crime of procuring a miscarriage. Therefore, defendant argues, these "gory details"—as he terms them—had no relevant place in the courtroom. Such a conclusion does not follow, for the reason that until defendant took the witness stand after the state had rested and admitted that he actually had performed an abortion upon the person of Mrs. Williams, part of the necessary proof of guilt was that the acts performed on her body were for the pur-

pose of accomplishing a criminal abortion rather than some other type of operation. Thus these items came within the rule that even repulsive exhibits may be exhibited to the jury where relevant to the case. Miranda v. State, 42 Ariz. 358, 367, 26 P.2d 241. Furthermore, the exhibits proved that the operation was upon a *pregnant* woman —part of the necessary proof under our statute. Sec. 43–301, supra. As a matter of fact counsel for defendant made no objection at the trial to the admission of the fetus as an exhibit, nor did he endeavor in any way to protest the presence in the courtroom of any of these objects.

■ Defendant next complains of repeated innuendoes by the prosecutor by means of what he terms "various devices" whereby the impression was given the jury that the defendant had committed many other similar offenses. Two such instances —termed "the device of the mysterious witnesses"—consisted of: (1) announcement by the county attorney at the beginning of the trial, and in the presence of the jury, that three women witnesses whose names were endorsed upon the information had been subpoenaed, but the state was "unable to locate" them; (2) a request by the prosecutor later in the course of the trial asking leave to add the names of four other women witnesses to the information, only one of whom was later called as a witness. We see nothing improper or ulterior in these acts. We must assume that the prosecutor was acting in good faith although it seems to us it would have been the better practice, under the circumstances, to have made these statements out of the hearing of the jury.

■ Defendant concedes the rule that in an abortion case where, as here, the intent of the defendant is a crucial issue, the state is free to show other acts of abortion for the purpose of establishing his intent in the particular case. Hightower v. State, supra. Two women witnesses were called for this express purpose; the one appeared with an attorney and claimed the constitutional privilege against self-incrimination. This claim was respected and the witness excused from testifying. The other, Mrs. June Hines, took the witness stand on rebuttal and testified that defendant had performed an unlawful abortion upon her for the sum of $150. This evidence was clearly admissible.

■ One of the business records obtained from the defendant's office by the prosecutor under a search warrant was a "little black book" which contained the names of a goodly number of his out-of-town patients, principally women. This book was never offered or admitted in evidence, yet without objection on this ground on the part of defense counsel, the prosecutor interrogated at length the defendant's bookkeeper about entries therein. We are convinced after a most careful examination of the transcript that there was nothing so highly prejudicial in this examination or in

failure to offer the book in evidence as to require a reversal.

It should be noted that no specific ruling of the trial court on the admission or rejection of evidence is assigned as error—there is merely a general charge of unfairness. Defendant attempts to excuse his failure to object to many of the matters now complained of on the ground that "the harm was done before an objection could be interposed". In this instance we do not recognize such an excuse as being a valid one. A motion to strike and for the court to instruct the injury to disregard any evidence that was improperly admitted would doubtless have been efficacious. We hold that defendant's failure to register a timely objection amounted to a waiver of the right to now claim error.

Defendant further urges that certain statements of the prosecutor, both during the trial and in his closing arguments to the jury, covered matters outside of the record and that this constituted such prejudicial misconduct as to require a reversal. We have carefully examined the reporter's transcript as to all these claimed departures from the record. Most of them are trivial, some are taken out of context, and none of the remarks in our opinion are so inflammatory, offensive or prejudicial in their nature as to warrant a reversal. We have repeatedly held that attorneys are given wide latitude in their arguments to the jury, State v. Thomas, 78 Ariz. 52, 68, 275 P.2d 408; and it is the universal rule

that if improper statements are made by counsel during the trial it is the duty of opposing counsel to register an objection thereto so that the court may make a correction by proper instruction and, if the offense be sufficiently hurtful, declare a mistrial. State v. Macias, 60 Ariz. 93, 131 P.2d 810; State v. Titus, 61 Ariz. 493, 152 P.2d 129; Alberty v. United States, 9 Cir., 91 F.2d 461. Failure to object to argument of counsel for the state constitutes a waiver of right to have it reviewed. Sullivan v. State, 47 Ariz. 224, 55 P.2d 312; Cochrane v. State, 48 Ariz. 124, 59 P.2d 658. In the instant case as to practically all of the various matters now complained of no objection was then made, and it is significant that on motion for new trial these matters were not set forth as grounds for granting such motion. Hence they cannot be reviewed here. State v. White, 56 Ariz. 189, 106 P.2d 508.

As part of his attack upon the "general unfairness permeating the record" and as a separate assignment of error defendant contends that he was prejudiced by allowing in evidence testimony as to the medical soundness of performing a therapeutic abortion under the facts and circumstances of this case. He argues that the trial so confused issues of malpractice and criminal abortion as to unduly prejudice the jury by admission of such testimony, since his competence was not relevant to any issue in an abortion case. However, we hold that the testimony which was elicited upon the question of defendant's methods was

14

relevant to the issue of intent. The evidence indicated no pressing urgency for the admitted abortion; defendant himself testified: "There was no big rush about it. It wasn't an emergency, I don't think." Thus, any evidence tending to prove that by choice the abortion was done in an ill-suited place, under less than adequate conditions, and contrary to accepted good practices would raise an inference that the acts were intended to be clandestine, not done for the purpose of saving a life imminently in danger but rather for purpose of illicit gain, with knowledge of the absence of therapeutic necessity. Defendant argues that methods of abortion used in a given case are a matter of difference of opinion between qualified physicians. However that may be, where the facts tend to prove a calculated course of conduct in derogation of known and accepted medical practices—i. e., where it is shown by competent testimony that an admitted abortion not imminently necessary to preserve health was committed under conditions foreign to accepted medical practices—such proof is relevant upon the issue of the intent of the physician performing the operation. Commonwealth v. Wheeler, 315 Mass. 394, 53 N.E.2d 4. Defendant's requested instruction No. 11, which was given, in construing the phrase "necessary to save the life of Dora Jean Williams" brought into the case the question whether "if the defendant did something which was recognized and approved by those reasonably skilled in the medical profession, it cannot be said the operation was not necessary to preserve the life of the patient." Thus defendant himself at the trial seemingly recognized the relevance of recognized medical practices upon the issue of intent.

Defendant assigns as error the refusal of the trial court to give his requested instruction No. 5, which reads as follows:

"You are instructed that Donald T. Williams, the husband of Dora Jean Williams as a matter of law, is guilty of a felony, and was an accomplice in the offense of illegally procuring an abortion. In this behalf I instruct you that under the law, no person can be convicted of a crime on the uncorroborated testimony of an accomplice.

"I further instruct you, that while Dora Jean Williams, under the law could not be considered an accomplice in the crime of procuring an illegal abortion upon herself, nevertheless, if she solicited and submitted to an operation with the intent illegally to procure her own miscarriage, she, herself, is guilty of a felony. If you find that these witnesses were so concerned in the commission of criminal acts or conduct, then you should view their testimony with great caution, and it is the duty of the court to warn the jury of the danger of conviction on such testimony."

It is apparent that this poorly-drawn instruction is incorrect in several respects,

viz.: a comment on the evidence and an error in law. People v. Pierson, 69 Cal. App.2d 285, 159 P.2d 39, 43. Defendant by this requested instruction asks the court to tell the jury that both Donald T. Williams and his wife, Dora Jean Williams, were "as a matter of law * * * guilty of a felony". No person can properly be thus branded unless adjudged so by a court of competent jurisdiction. The rule in this state is that when an instruction requested to be given is good in part and bad in part it is not error for the court to refuse to give it, nor is it required to separate the good from the bad. Strickland v. State, 37 Ariz. 368, 376, 294 P. 617. As to the latter part of this instruction we are of the opinion that the court on its own motion was under no legal duty to give such a cautionary instruction regarding the testimony of an accomplice, State v. Hale, 231 N.C. 412, 57 S.E.2d 322, and by the same reasoning it was not reversible error to fail to give such an instruction. State v. Simpson, Utah, 236 P.2d 1077. However, where as here no appropriate instruction was requested regarding the testimony of an accomplice it need not here be determined what effect the refusal of a proper instruction along that line would be.

We are inclined to agree with the state in its contention that many of the arguments—now being advanced by resourceful counsel appearing for the first time on the appeal—are in the nature of "Monday morning quarterbacking". After a careful examination of the entire record it is our conclusion that defendant was given a fair and impartial trial as is guaranteed by law. No error has been found of a nature so prejudicial to defendant's rights as would justify a reversal. We have heeded the mandate given us by Article 6, section 22, of the Constitution of Arizona: "* * * No cause shall be reversed for technical error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done."

Judgment affirmed.

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.