470 P.2d 671

**STATE of Arizona, Appellee,**

v.

**James Thomas ADAIR, Appellant.**

**No. 2019.**

Supreme Court of Arizona,
In Division.

June 19, 1970.

Rehearing Denied July 14, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., for appellee.

Robert E. Guzik, Phoenix, Court-appointed, for appellant.

UDALL, Justice.

James Thomas Adair, hereinafter referred to as the defendant, was tried and convicted of robbery in Superior Court, Maricopa County. He appeals that conviction and sentence of 10 to 20 years on three grounds: first that the County Attorney, by repeatedly terming the evidence "uncontradicted", improperly commented on defendant's failure to take the stand; secondly that the County Attorney improperly and prejudicially injected his personal beliefs into argument to the jury, and thirdly that defendant was denied his constitutional right to a speedy trial.

We deal initially with the third of defendant's grounds for appeal, i.e. that he was denied his right to a speedy trial. Consideration of this issue necessitates a somewhat detailed examination of the history of this matter.

The defendant was arrested on September 29, 1967. The preliminary hearing was held on October 6, 1967 and an information was filed against him in Superior Court on October 18, charging him with robbery. The defendant was arraigned on October 23, 1967 at which time a plea of not guilty was entered. Defendant waived the 60-day period for trial. Following stipulated continuances, the defendant on May 9, 1968 changed his plea to guilty, and on May 23, 1968 his attorney moved for physicians to be appointed to examine defendant's mental condition. This motion was granted.

On July 11, 1968, after the medical examination, defendant withdrew his plea of guilty and trial was set for August 20. On August 20 the defendant was present with counsel when the County Attorney moved for continuance until August 22. On August 22 the County Attorney moved for another continuance because a main witness could not be contacted. The trial judge, on August 22, ordered the matter continued until September 9, 1968, but with the proviso that if "service cannot be had * * * of the witness, John R. Young, prior to that time to assure his presence, the case will then stand dismissed." While the record is not altogether clear, it appears that the order was entered by Judge Farley sitting for Judge Glenn.

Defendant impliedly concedes here that had trial been held on September 9, there would have been no arguable violation of his rights to a speedy trial. The matter however did not come to trial on September 9. Four days before that date, on September 5, 1968 counsel for the defendant moved for a change of judge. Defendant was not present at the time this motion was made. The motion was granted and the case transferred to Judge Hays who scheduled a new trial date for September 12.

On September 11, the day before the new trial date, the defendant's counsel resigned from the Public Defender's Office, thereby necessitating a change in counsel. The newly-appointed counsel understandably felt that additional time was required for him to prepare the defense. He therefore by written motion requested a continuance. This motion was also granted and a new trial date set for November 7.

The case did come to trial on November 7, but a mistrial was declared. A further continuance was granted until December 6, 1968. The record indicates that defendant was incarcerated for a substantial portion of the 14 months between the filing of the information and the trial.

On December 6 the case again was called to trial, at which time defendant himself protested that the September 5 request for change of judge had been made by his counsel without defendant's knowledge and that continuances had been granted without defendant's knowledge. Arguments were had in chambers and the trial judge denied defendant's motion for dismissal. A new jury was empaneled and the case was tried, resulting in the conviction herein appealed.

It is defendant's position here that he was denied his right to a speedy trial. Defendant, who is now represented by other counsel, points to the minute order of Judge Farley of August 22, which stated that if the state was not ready for trial by September 9, the case would be dismissed. Defendant stresses that the record indicates the state could not in fact have been ready for trial on the 9th.

Defendant concludes that September 9 established the upper limit for his trial and that the delays in the trial following September 5 constituted a denial of his right to a speedy trial.

A criminal defendant's right to a speedy trial is protected by the Constitution of Arizona, Article 2, Sec. 24, A.R.S., and by Rule 236, Arizona Rules of Criminal Procedure, 17 A.R.S. The right is also delineated by the 6th Amendment to the United States Constitution, and this right has been held applicable to the states. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

▆▆▆ The right to a speedy trial may, however, like other constitutionally protected rights, be waived. Westover v. State, 66 Ariz. 145, 185 P.2d 315 (1947); Application of Hitchcock, D.C., 199 F.Supp. 228, cert. denied 369 U.S. 857, 82 S.Ct. 944, 8 L.Ed.2d 15, cert. denied Hitchcock v. Eyman, 376 U.S. 924, 84 S.Ct. 684, 11 L.Ed.2d 619 (D.Ariz.1961); State v. Greer, 7 Ariz.App. 155, 436 P.2d 933 (1968). Generally the right to a speedy trial is waived unless it is promptly asserted. White v. Wilson, 399 F.2d 596 (9th Cir.1968). See also Chapman v. United States, 376 F.2d 705, cert. denied 389 U.S. 881, 88 S.Ct. 119, 19 L.Ed.2d 174 (2d Cir.1967).

▆▆▆ The right to a speedy trial is relative, and delay is consistant with that right so long as the delay is not "purposeful or oppressive." United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); Maguire v. United States, 396 F. 2d 327, cert. denied 393 U.S. 1099, 89 S.Ct. 897, 21 L.Ed.2d 792 (9th Cir.1968); Mal-

donado v. Eyman, 377 F.2d 526 (9th Cir. 1967).

In examining defendant's position we must look closely at the facts in the record explaining the delay in the trial after September 5. While defendant now asserts that the request for a change of judge on September 5 was the cause of the delay, the facts show otherwise. In actuality the trial was scheduled by the new judge for September 12, only three days after September 9, but was continued past that date because of the appointment of new counsel for the defendant.

While defendant now suggests that there was no valid reason for the change of judge, the transcript indicates the change was made because of a possible conflict of interest. It must be borne in mind that the case did come to trial on November 7, in the presence of defendant. After a mistrial was declared, the trial was further delayed on motion of defendant's counsel.

We cannot hold that the delay complained of in the instant case was without cause, or oppressive. The substantial continuance now specifically objected to by defendant was that requested on September 11. Yet that continuance was requested by defendant's own counsel for justifiable cause in view of the difficulties in properly defending a client the day after being assigned as counsel. See State v. McWilliams, 103 Ariz. 500, 446 P.2d 229 (1968), wherein this court held that the trial court's forcing defense counsel to trial with only three days notice was reversible error. We can find no adequate support in the record for defendant's charge that the acts of his counsel were the product of "mistake, inadvertence or ignorance." See Henry v. Williams, D.C., 299 F.Supp. 36, 49 (1969).

▆▆▆ Defendant argues that the acts of his counsel in requesting a change of judge and moving for a continuance could not act as a waiver of defendant's right to a speedy trial. Defendant's argument ignores the fact that normally acts of counsel to seek delays on behalf of his client

are binding on the defendant. Application of Hitchcock, supra. We recognize that unusual situations may occur, and this court disapproves of repeated requests for continuances without the knowledge or presence of defendant. In the circumstances of this case, however, we hold that the delays in the scheduling of the trial did not constitute a deprivation of defendant's right to a speedy trial.

We turn next to defendant's contention that the County Attorney in his closing argument, by repeatedly terming the evidence "uncontradicted", improperly commented upon defendant's failure to take the stand, and thus committed reversible error.[1]

In Arizona the defendant has a statutory right to protection against comment by the prosecution on defendant's failure to testify. A.R.S. § 13–163, subsec. B. The United States Supreme Court in Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) held that the privilege against self-incrimination of the Fifth Amendment to the United States Constitution forbids such comment and is applicable to the states. However, as this court stated in State v. Pierson, 102 Ariz. 90, 91, 425 P.2d 115 116, (1967), "not every statement directed at the accused's evidence, or lack of it, violates his constitutional rights." This court in *Pierson* went on to point out that under federal cases "the Fifth Amendment is violated only if the

statements will call the jury's attention to the fact that defendant has not testified in his own behalf." Edwards v. Patterson, 249 F.Supp. 311 (D.Colo.1965); Knowles v. United States, 224 F.2d 168 (10th Cir. 1955). See also State v. Burrell, 102 Ariz. 136, 426 P.2d 633 (1967); Tomaris v. State, 71 Ariz. 147, 224 P.2d 209 (1950); State v. Ashby, 459 P.2d 403 (Wash.1969).

In the instant case defendant urges that the repeated references to the uncontradicted nature of the evidence showed a "studied and determined purpose" on the part of the prosecutor to call attention to defendant's failure to testify.

Upon careful examination of the transcript, we must reject defendant's contention in this regard. The prosecutor's closing speech must be taken in the context of the trial. See State v. Pierson, supra. During the trial defendant's counsel had endeavored to show contradictions and uncertainties concerning whether the defendant or his alleged accomplice had taken certain actions in the course of the robbery. The prosecutor's closing argument was thus aimed at stressing the matters which were not contradicted. Taken in context his remarks did not unduly call attention to defendant's failure to testify in his own behalf.

Finally we consider defendant's assertion that the conviction must be reversed because of improper and prejudicial remarks

---

1. A major portion of the prosecutor's remarks objected to here are contained in the following portion of the transcript:
"We do have some confusion, that is quite true; the confusion is, did Mr. Taylor say this, or did Mr. Adair say this? Did Mr. Taylor say, 'I will blow your head off,' or Mr. Adair say it?
"I cannot stress enough to you, that is not really the issue here. It is uncontradicted that both gentlemen were in there. There is no claim that they were not in there, none.
"It is uncontradicted that they were together. No contradiction period. So they were there. You have no evidence to indicate to the contrary; it is uncontradicted that Mr. Young was robbed. No evidence to indicate to the contrary. It is uncontradicted that there was—

MR. CHESTER: "Your Honor, I object to the County Attorney's statement that it is uncontradicted. The defendant does not have to contradict anything.
THE COURT: "The record may show your objection. Proceed.
\* \* \* \* \*
What the contradictions are as to who said what, that is a contradiction at least as to Mr. Young's testimony. No, as I was saying, it is uncontradicted that he was robbed. It is uncontradicted what was taken. It is uncontradicted that he was told to lie on the floor. It is uncontradicted that the gentlemen were driving a blue Ford station wagon from 1955. It is uncontradicted they had been in there earlier in the evening, and it is uncontradicted they left.

of the prosecutor in his closing argument relating to his personal belief in the guilt of the accused and also relating to the role of defense counsel in a trial.[2] No objection by defense counsel was raised at the time the allegedly improper remarks were made or at any time prior to submission of the case to the jury.

Wide latitude is given to counsel in their arguments to the jury. In all but the most unusual situations the law requires that opposing counsel timely object to any improper statements so that the jury may be instructed to disregard them. State v. Boozer, 80 Ariz. 8, 291 P.2d 786 (1955); State v. Titus, 61 Ariz. 493, 152 P.2d 129 (1944). See also State v. Abney, 103 Ariz. 294, 440 P.2d 914 (1968). Failure of counsel to object constitutes a waiver, and there is no basis for appeal. State v. Boozer, supra; State v. Evans, 88 Ariz. 364, 356 P.2d 1106 (1960), cert. denied, 371 U.S. 835, 83 S.Ct. 59, 9 L.Ed.2d 71.

We have carefully reviewed the allegedly improper statements by the prosecutor in this case. These statements cannot constitute a ground for appeal because any such ground has been waived by failure to make a timely objection. We note also that even though no objection was made, the jury was instructed that arguments of counsel are not evidence and further that "if any comment of counsel has no basis in the evidence, you are to disregard that comment." We believe that such instruction may well have corrected any prejudice which the prosecutor's statements may have created. See State v. Abney, supra, State v. Propp, 104 Ariz. 466, 455 P.2d 263 (1969).

Affirmed.

LOCKWOOD, C. J., and McFARLAND, J., concur.

2. Defendant points to the following statements by the prosecutor as an improper injection of his personal beliefs in the closing argument to the jury:

"During the course of this investigation, I am sure this discussion was had between the officers because you don't go off half-cocked investigating any case, just like you don't go off prosecuting a case or defending one that way; you tie up your ends, and you try to find out if the defendant is guilty or innocent."

Defendant also urges that the following statements constituted an unfair and prejudicial commentary upon the role of defense counsel:

"The job of the prosecution, the job of the defense attorney, they are two separate things. Well, look, compare them like a razor blade, because you have two sides, and I use this a lot of times, but this is so applicable: You have the single edged razor blade and a double edged razor blade. Would it stand to reason the defense attorney would be indicative of a double-edged razor blade and look for both sides of evidence to present to the jury that his defendant was innocent or guilty? In other words, to show guilt as well as innocence? No, no, oh no. He shows one side. His job is to get his client off the rap, but the County Attorney has a burden to the people, not only to you the jury and to the public, but also to the defendant, because if anything turns up to indicate—well, if any evidence turns up it must be presented in the courtroom to you to indicate, as well as guilt, the innocence of the defendant."