499 P.2d 726

**STATE of Arizona, Appellee,**

v.

**Forrest Lee COLSON, Appellant.**

**No. I CA–CR 337.**

Court of Appeals of Arizona,
Division 1,
Department B.

July 25, 1972.

Rehearing Denied Aug. 23, 1972.

Review Denied Oct. 10, 1972.

Gary K. Nelson, Atty. Gen. by William P. Dixon, Louis A. Moore, Jr., Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

EUBANK, Judge.

This appeal by the defendant from a judgment of guilt and his sentence to the

state prison for two to five years raises two questions for our consideration:

1. Was there a fatal variance between the information and the State's proof when the State's evidence was that Dana Brothers Shamrock Service Station was a sole proprietorship owned by one Ferrell Dana?

2. Should the Court have instructed the jury, as a matter of law, that Danny Sester was an accomplice to the crime charged?

With reference to the first question, the information to which the defendant entered his plea of "not guilty" reads, in part, as follows:

"The said FORREST LEE COLSON on or about the 5th day of September, 1969, and before the filing of this information at and in the County of Maricopa, State of Arizona, committed theft by embezzleling (sic) from Dana Brothers Shamrock Service Station property of the value of more than $100.00, all in violation of A.R.S. Section 13–681 and 13–682, as amended 1968, and 13–688; contrary to the form, force and effect of the statute in such cases made and provided and against the peace and dignity of the State of Arizona."

Appellant contends that a fatal variance existed between the information and the proof at trial, in that the theft by embezzlement was alleged to have been from an entity known as "Dana Brothers Shamrock Service Station", while the proof was that the ownership of the service station was held by one Ferrell Dana, a sole proprietor, doing business as "Dana Brothers" or as "Dana Brothers Shamrock Service Station."

We answered this same type of contention in our recent case of State v. Fulper, 16 Ariz.App. 357, 493 P.2d 524 (1972), which, of course, was unavailable to the parties in the preparation of their briefs. We adopt the reasoning in Fulper as dispositive of this contention.

In addition to Fulper, however, we note that Rule 145 subd. B, Rules of Criminal Procedure, 17 A.R.S., reads as follows:

"B. No variance between the allegations of an indictment, information or bill of particulars, which state the particulars of the offense charged, whether amended or not, and the evidence offered in support thereof shall be ground for the acquittal of the defendant. The court may at any time cause the indictment, information or bill of particulars to be amended in respect to any such variance to conform to the evidence."

This subsection of Rule 145 was used in State v. Scofield, 7 Ariz.App. 307, 438 P.2d 776 (1968) by Division Two of this Court to illustrate the difference in criminal pleading requirements under the old rules and under the new rules. Judge Molloy, speaking for the Court, said:

" 'Under the old rule which prevailed in England, requiring great particularity in the description of persons, it has been held in some cases that in a prosecution for larceny or embezzlement it is necessary to allege that the owner of the property, if not a natural person, is a corporation or otherwise a legal entity capable of owning property.' 88 A.L.R. at 485.

\*   \*   \*   \*   \*   \*

"Since Phelps, [Phelps v. State, 25 Ariz. 495, 219 P. 589 (1923)] the majority of decisions interpreting rules of criminal procedure similar to our own hold that the old formalistic rule is no longer pertinent and that it is usually not necessary to allege or prove corporate existence or the ability to own property on the part of an alleged victim in a larceny or embezzlement. . . .

\*   \*   \*   \*   \*   \*

"Under the allegations of this information, there is no confusion as to the identity of the motor vehicle which the defendant is charged with having embezzled from 'Econo-Car International Inc. of Tucson.' The proof is uncertain as

to whether this was a separate corporation or merely a trade name under which an individual by the name of Earl J. Mort did business. As to ownership, Mr. Mort testified that the car in question was one he had leased from '* * * Chrysler leasing corporation. * * *' But, whoever or whatever owned this automobile, it is crystal clear that the defendant did not and that this charge relates to a particular motor vehicle which he rented from a lessor doing business under the name indicated in the information. We hold that if there was a variance from the information or a failure of proof, it was as to matters basically immaterial." (7 Ariz. App. at 313–314, 438 P.2d at 782–783).

In the case at bar, the defendant was charged in the information with, " . . . theft by embezzleling (sic) from Dana Brothers Shamrock Service Station property of the value of more than $100.00. . . ." The evidence showed that although the business name of the service station was Dana Brothers Shamrock Service Station, it was actually owned by Ferrell Dana individually. The record further shows that the defendant enjoyed a position of trust with his employer, being employed as the night manager of the station.

■ It is clear to us that the defendant was put on notice that he was being charged with the crime of embezzling money from his employer, irrespective of the exact name of the owner alleged in the information. We hold, as in Scofield, that if there was a variance between information and proof, it was as to a basically immaterial matter.

Appellant next assigns as error the refusal of the trial court to instruct the jury that Daniel Sester was an accomplice as a matter of law.

■ His particular objection is to the trial court's refusal go give his requested instruction as follows:

"If the crime of theft by embezzlement, the commission of which is alleged in the Information, was committed by anyone, then, under the evidence in this case, and as a matter of law, the witnesses Danny R. Sester, Charles Hoover and John Buchanan were accomplices."

The record shows that Charles Hoover and John Buchanan were unavailable and never made an appearance at the trial as witnesses. The requested instruction is thus erroneous. It is axiomatic that a trial judge does not commit error by refusing to submit an erroneous instruction. As our Supreme Court stated in State v. Boozer, 80 Ariz. 8, 291 P.2d 786 (1955):

" . . . The rule in this state is that when an instruction requested to be given is good in part and bad in part it is not error for the court to refuse to give it, nor is it required to separate the good from the bad. Strickland v. State, 37 Ariz. 368, 376, 294 P. 617. . . ." (80 Ariz. at 15, 291 P.2d at 790).

*See also:* State v. Hendricks, 66 Ariz. 235, 186 P.2d 943 (1947).

■ Appellant maintains, however, that an instruction to the effect that Danny Sester was an accomplice was required by law in order to avoid confusion on the part of the jury since, by statute, a conviction may not be had on the uncorroborated testimony of an accomplice. A.R.S. § 13–136.[1] The trial judge did give the jury a lengthy and well considered instruction regarding the legal definition of an accomplice, the necessity of corroboration of his testimony, and the quantum of such testimony needed for conviction. The court, however, left to the jury the final determination of whether Sester was or was not

---

1. " § 13–136. Accomplice; testimony and corroboration

A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence which, in itself and without aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

an accomplice. These instructions were not objected to by appellant, and constitute a proper statement of law. *See*: State v. Rackley, 106 Ariz. 424, 477 P.2d 255 (1970); State v. Owens, 103 Ariz. 541, 447 P.2d 233 (1968); State v. Sheldon, 91 Ariz. 73, 369 P.2d 917 (1962).

▇▇▇ Although the evidence tending to show that Sester was an accomplice is somewhat equivocal, the prosecution admitted, in its summation to the jury, that Sester was an accomplice, and that his testimony must be corroborated by other evidence. In view of this admission, the trial judge could have instructed the jury to the effect that Sester was an accomplice as a matter of law. *See*, Cruz v. State, 40 Ariz. 436, 14 P.2d 247 (1932). However, there is no reversible error simply because such an instruction was not given. The question is whether the record contains sufficient corroboration of Sester's testimony, since it is well settled that in order to justify a reversal there must not only be error, but error that is prejudicial to the substantial rights of the appellant. Such prejudice will not be presumed but must appear from the record. *See* State v. Ybarra, 97 Ariz. 200, 398 P.2d 905 (1965). Furthermore:

"It is only when the instructions taken as a whole are such that it is reasonable to support the jury would be misled thereby that a case should be reversed for error therein. We think as good a test as any of whether specific sentences or phrases of the instructions contain reversible error is as follows: If any instruction directly contradicts the true rule of law so that the jury would be misled thereby on a material point, it is, of course, fatal; if, however, it is merely incomplete in itself, but when taken together with proper qualifications made in some other portion of the instructions it correctly states the law, it is not reversible error, unless it is so ambiguously worded that a reasonable man, taking the instructions as a whole, would be misled thereby. . . ." (Macias v.

State, 36 Ariz. 140, 153, 283 P. 711, 716 (1929)).

Finally, any evidence, which in only a slight degree implicates the defendant, is sufficient to corroborate an accomplice's testimony. State v. Springer, 102 Ariz. 238, 428 P.2d 95 (1967). *See also*, State v. Crawford, 106 Ariz. 322, 475 P.2d 936 (1970).

The record shows that the evidence introduced at the trial which corroborates Sester's testimony to the effect that the defendant planned the theft, involved Sester, Hoover and Buchanan in it, and caused the crime to be executed, consists primarily of the testimony of Phoenix Police Sergeant Evans, the investigating officer. Sergeant Evans testified that at the service station on the evening of the reported "robbery" he attempted to question the defendant about the details of the robbery and became somewhat suspicious when the answers that the defendant gave were vague, unsatisfactory and in conflict. However, he stated that he charged it off in his mind to nervousness on the defendant's part. In order to eliminate the possibility of embezzlement, Sergeant Evans suggested a search of the defendant's apartment which was located near to the station. The defendant consented, and Evans searched the premises in the presence of the defendant and Sester, who also resided there. The search of a dresser revealed a "wad of bills" and one of the change envelopes from the service station. Sergeant Evans immediately advised both the defendant and Sester of their constitutional rights. Both disclaimed ownership of the money or envelope or any knowledge of how they got there. Sergeant Evans then placed both of them under arrest and transported them to the police station. At the police station the defendant voluntarily admitted his participation in the theft, and his involvement with the three other persons, Sester, Hoover and Buchanan. He also admitted that he had instructed Sester to take some of the money to his apartment and to hide it.

In our opinion Sergeant Evans' testimony furnishes sufficient corroboration of Sester's testimony. We accordingly hold that there was no prejudicial error involved in this case by the failure of the trial court to instruct the jury that Danny Sester was an accomplice as a matter of law.

Judgment affirmed.

HAIRE, C. J., and JACOBSON, J., concur.