526 P.2d 163

**STATE of Arizona, Appellee,**

v.

**John Martinez ARREDONDO, Appellant.**

**No. 2775.**

Supreme Court of Arizona,
In Banc.

Sept. 6, 1974.

Rehearing Denied Oct. 8, 1974.

---

Gary K. Nelson, Former Atty. Gen., N. Warner Lee, Atty. Gen., by Michael C. Anderson, Asst. Atty. Gen., Phoenix, for appellee.

Robert S. Cronin, Jr., Phoenix, for appellant.

HOLOHAN, Justice.

John Martinez Arredondo was charged with the crime of murder. A trial before a jury resulted in his conviction for second degree murder and a sentence to a term of not less than ten nor more than thirty years in the Arizona State Prison. From that conviction and sentence the defendant appeals.

The following are the facts necessary for a determination of the issues on appeal. On August 1, 1972 the defendant left his home and proceeded to the Green Tree Bar, arriving about 9:00 p.m. A few minutes after entering the bar, the defendant was approached by the deceased, David Smith, and a male companion.

Smith and the defendant knew each other in that Smith was engaged to the defendant's next-door neighbor. The previous March, the defendant had called the police, at his neighbor's request, when he observed Smith breaking into the neighbor's home. Testimony revealed that Smith had indicated he would get "that God-damn Mexican that called the cops." Smith had the reputation in the community for violence and the defendant had indicated fear and apprehension for both himself and his family because of Smith's presence in the neighborhood.

Yet on the night of their meeting at the Green Tree Bar there was no showing of tension between the men and they drank and shot pool together. They became quite intoxicated and the men left the bar together at about 11:00 p.m. The defendant had returned home and informed his wife he was going to Avondale with a "white guy." Before leaving the bar Smith had telephoned a friend of his and told her that he might be calling her for bail in the event he was arrested that night. Smith's fiancee testified earlier that day she had found a piece of paper in Smith's apartment which had written on it, "ARREDONDO."

About midnight the defendant appeared at the Avondale Police Station asking to see the chief of police. When he was told the chief was on vacation and asked if anyone else could be of help, he replied that he had just "murdered" a man. He was informed of his "Miranda rights" by the officers.

Two confessions followed and, although somewhat contradictory, the defendant stated that at the bar Smith had shown him about $500 and said that he had some stolen property in Avondale that the defendant might want to buy. They agreed to drive to Avondale and look at the property. Just before approaching the Agua Fria Bridge on West Indian School Road, according to the defendant, Smith told him to pull over because he wished to urinate. The car crossed the bridge and the defendant drove about three hundred feet into the desert. Smith got out of the car and in an angry voice told the defendant to shut off the car radio. Smith circled the rear of the car and came over to the driver's side of the vehicle. The defendant said he thought he saw Smith pull something from his pants and in fear pulled a .22 caliber rifle from under the front seat. Smith backed off, but the defendant began firing the rifle which contained a seven-round clip. After expending the first clip, he re-

loaded and continued to fire. Smith was hit eleven times with bullets fired by the defendant.

After the shooting, the defendant drove to his brother's home and telephoned his wife explaining what had happened. He told her he intended to surrender to the police. He returned to the desert area to confirm that Smith was dead and then drove to the police station.

The victim was found to have a .46 blood alcohol level which would normally result in unconsciousness, but, according to an expert called by the defense, in the case of the victim, he might have built up sufficient tolerance so that sluggish movement was possible. The medical examiner testified that a person with a .46 blood alcohol level could not function either physically or mentally with any degree of competence and would be incapable of hatching any plan.

The money which the victim had in his possession earlier that night was not found on his body nor was it otherwise accounted for.

At trial the defendant's position was that the killing had occurred in self-defense, but the defendant did not take the stand to testify in the trial of the case.

As his first issue on appeal the defendant contends the county attorney committed reversible error by commenting on his failure to testify in his own defense. In closing argument the prosecutor stated:

"The officers went on further and they stated—Now, everything the officers have said, everything they have said is uncontroverted. Everything they said. Officer Bernier, nobody challenged that. Nobody challenged what Officer Bottrell said. Nobody challenged what Officer Kohler said. Nobody challenged what Officer Sauerbrey said. Their testimony sits before you uncontroverted, uncontested."

Following defense counsel's closing argument, the prosecutor in rebuttal said:

"Defense counsel said there was no eyewitnesses to the shooting. That is not true. There was one witness, right there (indicating). And you know what, the best he could do—Mr. Cronin called him up here, had him stand in front of you, and you know something? That man didn't even have the guts to look you people square in the eye. He looked down the whole time and kept his eyes down. Isn't that right?"

The state insists that these statements were merely used as general comments on the failure of the defense to contradict evidence and thus not error under State v. Acosta, 101 Ariz. 127, 416 P.2d 560 (1966). In the alternative they feel if it was error, that error was invited and under any circumstances harmless.

The first statement by counsel for the state would fall under the rule as laid down in *Acosta*. The county attorney was bringing home the point that the officers had testified to certain facts and that evidence was uncontroverted, therefore justifying a jury verdict of guilt. Similar comments by the prosecutor had been held proper. State v. Adair, 106 Ariz. 58, 470 P.2d 671 (1970); State v. Pierson, 102 Ariz. 90, 425 P.2d 115 (1967); Tomaris v. State, 71 Ariz. 147, 224 P.2d 209 (1950); State v. Serna, 69 Ariz. 181, 211 P.2d 455 (1949).

The second comment of the prosecutor was a comment on the failure of the defendant to take the stand. Both the Federal and State Constitutions protect the defendant from being compelled to give evidence against himself, and by statute, A. R.S. § 13–163, the refusal of the defendant to be a witness may not be used against him in trial. Normally such a comment constitutes fundamental error. State v. Smith, 101 Ariz. 407, 420 P.2d 278 (1966); State v. Rhodes, 110 Ariz. 237, 517 P.2d 507 (1973); Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

The state argues that the comment was invited and that the defense interject-

ed the matter of the defendant not taking the stand. The record supports this position. In at least two instances the defense specifically made reference to the fact that the defendant did not choose to testify. The first instance occurred at the time the defense rested its case:

"MR. CRONIN: Your Honor, at this time I advise the Court that I advised my client not to take the stand and that at this time we would rest."

The second instance occurred in final argument of the defense:

"With regard to the privilege against self-incrimination, Mr. Arredondo did not get on the stand and you will be instructed by His Honor at the close of the case that you cannot take that into consideration against him in your jury deliberations."

During his argument to the jury the defense counsel had the defendant stand before them so that the jury could appreciate the relative differences in size between the defendant and the victim. The record reflects:

"The victim, statistical-wise, was 6'2", 187 pounds, which means he was about my height and about seven pounds heavier than I am. . . .

"John, would you come forward.

* * * * * *

". . . Now, this is John. He is a human being. He is flesh and blood, and you see his size. He is—I won't say he is small, but that is his relative size in relation to me."

The defense counsel also argued:

"There was no money found on the defendant, and, this is important, there were no eyewitnesses to the shooting. No eyewitnesses to the robbery—alleged robbery—or rummaging through the wallet."

■ Taking into consideration the background material preceding the comments of the prosecutor the matter must be considered in a different light. The references to the failure of the defendant to take the stand were first made by the defense, and this cannot be charged against the state. The remarks by the prosecutor concerning the eyewitness to the shooting were in response to the statements of the defense and are not prejudicial if they are reasonable and pertinent to the issues raised by the defense in argument. State v. Connor, 142 La. 631, 77 So. 482 (1917); State v. Bickham, 239 La. 1094, 121 So.2d 207 (1960), cert. denied, 364 U.S. 874, 81 S.Ct. 123, 5 L.Ed.2d 98 (1960); Commonwealth v. Darnell, 179 Pa.Super. 461, 116 A.2d 310 (1955).

Unlike the remarks in State v. Smith, *supra*, the remarks of the prosecutor did not go beyond a pertinent reply and were not prejudicial. The remarks were invited and occasioned by the statements of defense counsel; hence they are not grounds for reversal. State v. Gortarez, 98 Ariz. 160, 402 P.2d 992 (1965); State v. Evans, 88 Ariz. 364, 356 P.2d 1106 (1960); Post v. State, 41 Ariz. 23, 15 P.2d 246 (1932).

■ The second issue raised by the defense also concerns the argument of the prosecutor. The defense contends that the prosecutor implied in argument that the defense counsel received the money taken from the victim. Whether the remarks of the prosecutor actually conveyed that meaning is not necessary for us to decide because the defense raised no objection to the remarks at trial, and they cannot for the first time raise the issue on appeal. State v. Taylor, 109 Ariz. 267, 508 P.2d 731 (1973); State v. Adair, 106 Ariz. 58, 470 P.2d 671 (1970); State v. Boozer, 80 Ariz. 8, 291 P.2d 786 (1955).

The final issue presented by the defense is that the confessions of the defendant should not have been admitted in evidence because they were not voluntarily made.

■ A hearing was had prior to trial on the question of the voluntariness of the defendant's statements. As required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) the trial court heard the evidence concerning the taking of the statements from the defendant. After

hearing the evidence the trial court ruled that the confession was admissible because it was voluntarily made. Since Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L. Ed.2d 618 (1972) the burden of proof in a voluntariness hearing is by a preponderance of the evidence. The record of the hearing supports the conclusion of the trial court that the statements of the defendant were voluntarily made.

██ Evidence was offered at the hearing bearing on the state of intoxication of defendant at the time he made his statements. The mere fact of intoxication does not prevent the admissibility of a statement. If it is shown that the accused was intoxicated to such extent that he was unable to understand the meaning of his statements, it would be inadmissible. State v. Clark, 102 Ariz. 550, 434 P.2d 636 (1967); State v. Smith, 12 Ariz.App. 272, 469 P.2d 838 (1970); 69 A.L.R.2d 361. There was substantial evidence to support the conclusion that the defendant was not so intoxicated that he was unable to understand the meaning of his statements.

██ The defendant came to the police station in the first instance to confess to having killed a man, so it was with this background that the police interrogation began. The defendant was advised of his so-called Miranda rights before each statement, and he willingly spoke to the officers concerning the events of that night.

The record supports the contention of the defense that the defendant advised the officers that he wanted a court-appointed lawyer, but the record also shows that the defendant meant that the lawyer was for his trial, but, as the defendant stated, "I don't need a lawyer to talk." Having been advised of his rights, the choice was the defendant's, and he made the decision to speak without prior consultation with an attorney.

We have examined the factual circumstances surrounding the admissions of the defendant, and we find that the statements were properly admitted. State v. Miller, 110 Ariz. 597, 522 P.2d 23 (1974).

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.

CAMERON, Vice Chief Justice (dissenting).

I regret that I must dissent.

Our statute § 13–163 A.R.S. states:

"A. A defendant in a criminal action or proceeding shall not be compelled to be a witness against himself, but may be a witness in his own behalf. If he offers himself as a witness in his own behalf, he may be cross-examined to the same extent and subject to the same rules as any other witness.

"B. The defendant's neglect or refusal to be a witness in his own behalf shall not in any manner prejudice him, or be used against him on the trial or proceedings."

And we have stated:

"We must follow the constitutional and legislative mandate, (A.R.S. 13–163), that a defendant's refusal to be a witness in his own behalf shall not in any manner prejudice him or be used against him." State v. Rhodes, 110 Ariz. 237, 238, 517 P.2d 507, 508 (1973). See also, State v. Acosta, 101 Ariz. 127, 416 P.2d 560 (1966); State v. Smith, 101 Ariz. 407, 420 P.2d 278 (1966); State v. White, 16 Ariz.App. 279, 492 P.2d 1217 (1972); State v. Villalobos, 6 Ariz.App. 144, 430 P.2d 723 (1967).

Not only does our statute and Constitution prohibit such comment, but also the United States Constitution. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L. Ed.2d 106 (1965).

The majority opinion takes the position that the comment of defense counsel to the jury constituted invited error by the defendant which allowed the prosecutor to comment on defendant's failure to take the stand. I disagree.

The defense counsel towards the close of his argument to the jury stated:

"Ladies and gentlemen, at the close of the case His Honor will read a number of instructions to you. It is what we call the charge to the jury, and I would very briefly like to go over a couple of them so as to make sure in my own mind, at least, I have covered them."

He then discussed the various instructions the court would give. For example:

"You will get an instruction as to the character of the defendant and you will be instructed that you can take that into consideration in coming to your decision as to whether there is an element of reasonable doubt, here. In other words, you can take that into consideration—you should take that into consideration, if that has any bearing on making it improbable that the defendant Mr. Arredondo killed this man in cold blood, first-degree murder.

"* * * You will receive an instruction as to confessions and statements and admissions. You are the boss, here. You will be able to decide whether— what weight to give to the confession, whether it was voluntary, whether it was truthful, so forth. Most of the confessions are truthful and are consistent, except in the few areas we have gone over before.

"Reasonable doubt. I will go over this just briefly later. Reasonable doubt, it applies to the whole case."

He then discussed the instruction on murder, plea of self-defense, reasonable doubt, and then the statement complained of:

"With regard to the privilege against self-incrimination, Mr. Arredondo did not get on the stand and you will be instructed by His Honor at the close of the case that you cannot take that into consideration against him in your jury deliberations. When you get into that jury room, your focus is going to have to be beyond a reasonable doubt. Remember that when you resolve each and every issue, because it is important. I can't stress that more."

This was, I believe, merely a passing comment upon the court's instructions and I do not believe that the comment standing alone should allow the prosecution to disregard our statutes and case law on this subject. Neither do I believe that the announcement that the defendant will not, at the suggestion of counsel, take the stand is sufficient to allow the prosecution to open this subject before the jury.

I am fearful that by the decision we make today prosecutors will be unnecessarily encouraged, by the most trivial of remarks of defense counsel, to comment to the jury in contravention of our statute and the Constitutions of the State of Arizona and the United States.

I therefore dissent.