480 P.2d 8

**STATE of Arizona, Appellee,**

v.

**Alfred Junior CRANK, Appellant.**

**No. 2 CA–CR 223.**

Court of Appeals of Arizona,
Division 2.

Jan. 29, 1971.

Rehearing Denied Feb. 23, 1971.
Review Denied March 23, 1971.

* This case was decided under the law as it existed prior to 1 January 1969.

Gary K. Nelson, Atty. Gen., by John S. O'Dowd, Asst. Atty. Gen., Tucson, for appellee.

Schroeder & Soelter, by Larry S. Rosenthal, Tucson, for appellant.

HATHAWAY, Judge.

The appellant was tried to a jury and convicted of attempted robbery, A.R.S. §§

13–641, 13–108, 13–110 and 13–643, subsec. A, as amended, and unlawful wearing of mask, A.R.S. § 13–981. He was sentenced to imprisonment in the Arizona State Prison for not less than three nor more than five years on each count, the sentences to run concurrently.

On April 14, 1970, at approximately 2:30 a.m., the appellant entered the lobby of the Flamingo Hotel located at 1300 N. Stone Avenue, Tucson, Arizona. Mr. Pulse was on duty as night clerk and was alone in the lobby. Crank had a short conversation with Mr. Pulse relating to car rental. Crank was informed that no one was there at that time for the car rental agency and that it didn't open until 7 in the morning. Crank then stated, "You rent rooms." Mr. Pulse responded in the affirmative and Crank then turned around and walked out. Mr. Pulse was suspicious of the appellant because of his demeanor and questions. He walked outside on three occasions to see if he could locate Crank. Pulse, armed with a .22 pistol, was unsuccessful and returned to the hotel.

A short while later, the appellant appeared at the lobby door with a scarf wrapped about his face and a bag wrapped tightly about his right hand. He opened the door, entered and approached the night clerk in a "stalking" manner, not uttering a word. Mr. Pulse thought he was about to be shot, so he fired twice. One bullet struck the appellant and he fell to the floor.

Mr. Pulse testified that the following took place after the shooting:

"The first thing he said was, 'Why did you shoot me? I wasn't going to rob you.' I hadn't said anything about him robbing me, in fact I hadn't said anything to him up to that point except when I walked over toward him I asked him if he had a buddy outside so then he said, 'Why did you shoot me? I wasn't going to rob you.' I didn't answer and he said, 'I am drunk and I am hungry.' I didn't answer that. He said, 'You had a right to shoot me.' Then I said, 'What?' And

he repeated the 'You had a right to shoot me,' and then he said—about that time he reached up and pulled down the mask from his eyes."

At that point, Mr. Pulse was able to identify him as Crank, the person who had entered a few minutes earlier inquiring about the car rental. Mr. Pulse then called the police department and requested an ambulance. The appellant was taken to St. Mary's Hospital where he remained until May 6, 1969, and was released to the custody of the Pima County Sheriff's Department where he remained until his trial on November 25, 1969.

It is first contended that the appellant was deprived of his right to counsel and a speedy trial. In considering these charges, we find that the appellant was first given a preliminary hearing on June 14, 1969, and that he was then unassisted by counsel. His request that the hearing be reported was refused. At his arraignment in superior court, counsel was appointed and the cause was remanded to justice court for a second preliminary hearing. The appellant was again bound over to superior court for further proceedings which resulted in his conviction from which this appeal is taken. The appellant relies on Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), for the proposition that he was entitled to counsel at the first preliminary hearing. We agree. However, the remand for a second preliminary hearing where he was assisted by counsel eliminated the former error. He seemingly contends that all subsequent prosecution is tainted and barred by the defective first preliminary hearing. No authority is given for such notion nor do we subscribe to it. Appellant concedes that the information based upon the first preliminary hearing was quashed. The information on which he was tried and convicted emanated from the second preliminary hearing.

Appellant was held to answer after the second preliminary hearing on September 25, 1969, and claims for the first time

on appeal that he was denied his right to a speedy trial guaranteed under Arizona Constitution, Art. 2, Sec. 24, and the Sixth Amendment of the United States Constitution. The right is also protected by Rule 236, Arizona Rules of Criminal Procedure, 17 A.R.S. The superior court minutes indicate that the trial date was set for November 25, 1969, during arraignment on October 7, 1969, when defense counsel was present. The last word from our supreme court on the subject appears to come from State v. Adair, 106 Ariz. 58, 470 P.2d 671 (1970), where the court stated:

"Generally the right to a speedy trial is waived unless it is promptly asserted. [citing cases]"

State v. Juarez, 5 Ariz.App. 431, 427 P.2d 565 (1967), heavily relied upon by appellant is inapposite. There, the claim that a speedy trial had been denied had been raised by a motion to quash the information. Not so here. There, counsel was appointed immediately before the preliminary hearing without sufficient opportunity to prepare. This, together with unwarranted delays and continuances, was found of sufficient prejudice to require reversal. Delay in holding the first preliminary hearing and arraignment here appears attributable, in part at least, to appellant's hospitalization. Here, there is no showing of purposeful or oppressive delay, State v. Adair, supra; United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), nor that the appellant was prejudiced in any way, State v. Saiz, 103 Ariz. 567, 447 P.2d 541 (1968). We conclude that the appellant waived any right to complain about the date set for trial.

■■ The appellant next contends that statements by the prosecutor in closing argument amounted to a comment on appellant's constitutional privilege to remain silent. No objection was made to the argument. The privilege against self-incrimination, protected by the Fifth Amendment, is applicable to the states through the Fourteenth Amendment, and comment by the prosecution on invocation of the privilege is forbidden, Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L. Ed.2d 106 (1965); A.R.S. § 13–163, subsection B. Argument directed at an accused's evidence or lack of it, is permissible. State v. Adair, supra; State v. Pierson, 102 Ariz. 90, 91, 425 P.2d 115, 116 (1967). In Knowles v. United States, 224 F.2d 168, 170 (10th Cir. 1955), relied upon in *Pierson* and *Adair*, the court stated:

"It is concededly improper and reversible error to comment on the failure of a defendant to testify in his own behalf, and the test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify."

Following this guide, we have concluded that the argument complained of here is directed principally to the lack of evidence supporting appellant's position.

Appellant's complaints are directed to the following portions of argument:

"There isn't a word spoken. Nothing like I have come to deliver a lower price on my estimate for Mr. Moore, or Lord knows why there is no testimony as to what he is doing there the second time."

\* \* \* \* \* \*

"So Mr. Crank was very much surprised I suppose at what had happened and made those statements none of which explained anything as to why he was there.

There hasn't been one bit of evidence that come [sic] in here from that stand or from any of these pieces of evidence which would indicate that Mr. Crank was there about some painting the second time he was there. There isn't any controverted facts connected with this case which are of any real significance."

\* \* \* \* \* \*

"Now where did all of this evidence come from about what Mr. Crank was doing? From there? No. From there. Mere speculation on the part of the defense attorney as to what happened."

Considering the foregoing argument ·in context, we have concluded that it is directed to Mr. Pulse's testimony and the lack of ·evidence supporting appellant's theory of the case. The lack of exculpatory statements at the time of the offense is emphasized. The argument also appears responsive to defense counsel's interpretation of the evidence and calculated to remind the jury that defense counsel's argument was not evidence.

We also note that the jury was instructed that, "The evidence in the case consists of the sworn testimony of the witnesses, all exhibits which have been received in evidence and all facts which have been admitted or stipulated." The jury was further instructed that they were, "to consider only the evidence in the case * * *." At the request of defense counsel, the instruction was given that "Failure of a defendant to take the witness stand in his own behalf cannot in any manner prejudice him or be in any wise considered by you at arriving at a verdict in this case. In other words, it is the duty of the State of Arizona to prove the guilt of this defendant the same as any other person charged with a crime and when a person charged with a crime does not take the witness stand then the jury cannot and must not consider that as against the defendant in arriving at a verdict."

■ The final argument complained of is the last sentence in the prosecutor's closing argument where he stated:

"And I suggest that the weight of the evidence has crashed down on Mr. Crank because there isn't any evidence any other way except—not from the stand but from that table and that is not enough."

Although this statement may appear to be close to the line, we do not construe it to be an improper comment on defendant's failure to take the stand in view of the lack of objection, the court's instructions previously adverted to, and the insignificance of the statement. State v. Burrell, 102 Ariz. 136, 426 P.2d 633 (1967), where the comment, "Now, Bobby ——— said

nothing. What have you heard?" was deemed harmless under Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Additionally, in *Burrell,* objection was made.

■ It is finally contended that prejudicial error was committed in permitting the state's witness to read to the jury from the police report over hearsay objection. The trial judge explained that the "* * * reason for * * * allowing portions of Mr. Pulse's statement to the detective to be read to the jury is that the defense attorney by his cross examination has injected the issue of whether or not certain statements that were made by Mr. Pulse on the witness stand were recent fabrications or at least inconsistent with his earlier statements concerning the incident. So for that reason I allowed prior consistent statements which were consistent with his testimony at this time to be read to the jury." Defense counsel had cross examined Mr. Pulse concerning his failure to mention at the preliminary hearing that the appellant had stated shortly after Mr. Pulse had shot him, that "You had a right to shoot me." On redirect, the prosecutor pointed out that the defense had raised the issue of Mr. Pulse's failure to mention that statement during the preliminary hearing.

"A *failure to assert* a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact." Wigmore on Evidence, Vol. 111A, § 1042 at 1056.

Therefore, Mr. Pulse had, in effect, been impeached by self-contradiction. The use of prior consistent statements is proper for rehabilitation where an issue of recently contrived testimony is injected. State v. Murley, 35 Wash.2d 233, 212 P.2d 801 (1949); People v. Kynette, 15 Cal.2d 731, 104 P.2d 794 (1940); People v. Rosoto, 58 Cal.2d 304, 23 Cal.Rptr. 779, 373 P.2d 867 (1962) (see footnote one to § 1129, Wigmore on Evidence, Vol. IV at 206 for collected cases).

Appellant takes the position that State v. Lane, 69 Ariz. 236, 211 P.2d 821 (1949) re-

**592**

quires reversal when prior inconsistent statements of a witness are introduced. The situation in Lane, supra, is much different than here. In *Lane,* the state was attempting to impeach its own witness by prior inconsistent statements whereas in the present case the statements are being used to rehabilitate a state's witness that had earlier been impeached by the defense. State v. Lane, supra,. does not apply.

Affirmed.

KRUCKER, C. J., and HOWARD, J., concur.