500 P.2d 629

**STATE of Arizona, Appellee,**

v.

**James Daniel DEVANEY, Appellant.**

**No. 2 CA–CR 298.**

Court of Appeals of Arizona,
Division 2.

Sept. 8, 1972.

Rehearing Denied Sept. 27, 1972.

Review Denied Oct. 24, 1972.

Gary K. Nelson, Atty. Gen. by John S. O'Dowd, Asst. Atty. Gen., Tucson, and James P. F. Egbert, Certified Third Year Law Student under Rule 28(e), for appellee.

Edward P. Bolding, Pima County Public Defender by Albert G. Freeman, Jr., Deputy Public Defender, Tucson, for appellant.

HOWARD, Judge.

Contrary to his plea the defendant was found guilty by a jury of aggravated battery with a prior conviction of assault with a deadly weapon or force and sentenced to imprisonment in the Arizona State Prison for not less than nine nor more than ten years.

At issue is the admission into evidence of defendant's statements in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The evidence in the trial court consisted solely of the testimony of the prosecution witnesses. The defendant did not testify on his own behalf or offer any evidence. Mr. Jack Davis, the owner of the Esquire

Club at 225 East Congress, Tucson, Arizona, testified that on the evening of October 11, 1971, he first became aware of the presence of the defendant in his establishment. At that time the defendant was sitting with some other persons. Mr. Davis was called over to the table where the defendant was seated and was introduced to him. Later that evening, the couple with whom the defendant was seated called Mr. Davis over to the table and requested that he ask the defendant to leave them alone and stop bothering them. The defendant then moved to a different place at the bar but kept bothering the couple and was again asked to leave them alone. At approximately 9:45 that evening the defendant was seated in a booth with some young people. One of the young persons came over to the bar and told Mr. Davis that the defendant was "getting pretty vulgar." When the defendant came up to the bar and ordered another beer he was told by Mr. Davis to leave the premises, which he did. However, about fifteen minutes later the defendant returned through the double swinging doors of the bar. Mr. Davis again requested him to leave the premises. The defendant seemingly complied and went out through the swinging doors, but instead of leaving the front of the establishment, he stationed himself directly in front of the doors. Suddenly, the defendant pushed the doors open and "hit" Mr. Davis who was then standing near the door, in the chest. Mr. Davis then kicked the defendant out through the front door, followed him out onto the sidewalk and observed him standing in the street with a knife in his hand. He described it as having a blade approximately two to two and one-half inches long. Mr. Davis ran back into the bar, grabbed a pool cue, shouted to the people in the bar that the "old man's got a knife out there," and ran back out onto the sidewalk. As soon as he got out on the street he saw that the defendant was gone and at that time felt that he was all covered with blood. Mr. Davis returned to the bar, told the bartender on duty that he had been stabbed and called the police. The police arrived within minutes and were given a description of the defendant by Mr. Davis. Mr. Davis subsequently went to the hospital for treatment of the wound which required stitches and left a two inch scar on his left side.

The next witness who testified was Mr. Carl Lickers. He was seated with his wife in the bar at the time when the incident in question took place. The witness saw what occurred inside the bar and identified the defendant as being the man involved in the altercations with Mr. Davis.

Officer Hildebrand of the Tucson Police Department testified that he arrived on the scene shortly after the incident occurred and observed Mr. Davis holding his side. Mr. Davis told him that he had been stabbed and the officer noticed he had blood on his shirt. Mr. Davis gave Officer Hildebrand the defendant's description. Approximately ten to fifteen minutes later Officer Hildebrand saw the defendant in the back of a police squad car. At this time Offficer Hildebrand was questioning witnesses and when he asked them if this was the person that did it, all three of them responded that it definitely was.

Officer Gary Carstensen of the Tucson Police Department testified that the first time he saw the defendant on the evening in question was at approximately ten p. m. when the defendant was coming out of the front entrance of the Black Door Bar. At that time Officer Carstensen had a description of the defendant. The officer asked the defendant for identification and, after warning him of his rights under *Miranda,* asked whether or not he had been at the Esquire. He responded that he had been there earlier. The officer then asked him if he knew anything about the knifing, to which he replied that he did not. When asked whether or not he owned a knife he said that he did have a pen knife but had lost it earlier. It is the admission into evidence of these foregoing statements which defendant contends was prejudicially erroneous.

On cross-examination defense counsel was able to procure the police report prepared by the officer. The report stated that the defendant had requested an attorney after the *Miranda* warnings. Upon further questioning, the officer testified that the defendant did not say anything about an attorney until after the statements were made. It appears from our review of the transcript that no statements made *after* the defendant requested an attorney were admitted into evidence. However, the trial court ordered the officer's testimony as to the defendant's statements to be stricken and instructed the jury to disregard them. Defendant claims prejudicial error notwithstanding, since the jury did in fact hear the statements and it must be presumed that it was influenced by them.

■■ As we read the testimony below the dictates of *Miranda* were not violated since no statements made after the request for an attorney were admitted into evidence. Our review of the evidence, however, does reveal error not mentioned by either party on appeal. After a hearing on voluntariness as to the statements made to the police officers, defendant moved that "they be judged to be not voluntary." The court then stated "the motion will be overruled. The witnesses will be permitted to testify. The court finds, based on this hearing, that they should be permitted to testify before the jury."

■ Our Supreme Court has stated that at the conclusion of a hearing on voluntariness, the judge must make a definite determination as to voluntariness. It is only when such determination is made that a statement or confession may be admitted and considered by the jury. State v.

Wright, 103 Ariz. 52, 436 P.2d 601 (1968); State v. Goodyear, 100 Ariz. 244, 413 P.2d 566 (1966); State v. Costello, 97 Ariz. 220, 399 P.2d 119 (1965); State v. Gallagher, 97 Ariz. 1, 396 P.2d 241 (1964); State v. Owen, 96 Ariz. 274, 394 P.2d 206 (1964). This principle was reiterated by Division One of this court in State v. Robinson, 6 Ariz.App. 419, 433 P.2d 70 (1967). Although the finding of the court in the case *sub judice* does not comply with the foregoing cases, reversal is not mandated. The admission into evidence of a defendant's statements obtained in violation of *Miranda* can be harmless beyond a reasonable doubt. Kaneshiro v. United States, 9 Cir., 445 F.2d 1266 (1971), cert denied, 404 U.S. 992, 92 S.Ct. 537, 30 L.Ed.2d 543 (1971). It has been suggested that three questions must be satisfactorily answered before the reviewing court may apply the harmless error doctrine of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). They are: (1) When the facts are weighed, it is clear beyond a reasonable doubt that the defendant is guilty as charged? (2) Did the error contribute to the guilty verdict, and if so, to what degree? (3) If the Chapman-Harrington test is satisfied, do public policy reasons require reversal?[1]

Applying these tests to the case at hand we find that it is clear beyond a reasonable doubt that the defendant is guilty as charged, that the error did not contribute to the guilty verdict and that public policy reasons do not require reversal.

Affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.

---

1. See "When Harmless Error Isn't Harmless," Cameron and Osborn II, Arizona State University Journal, Law and the Social Order, Vol. 1, 1971, p. 23 et seq.