574 P.2d 60

**STATE of Arizona, Appellee,**

v.

**George CANADAY, Appellant.**

**No. 1 CA–CR 2393.**

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 13, 1977.

Rehearing Denied Feb. 7, 1978.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Division, Crane McClennen, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Edward C. Voss, Deputy Public Defender, Phoenix, for appellant.

## OPINION

EUBANK, Judge.

The appellant was convicted of grand theft and burglary following a jury trial in the Superior Court. He was sentenced to concurrent terms of 14 to 15 years for first degree burglary and 9 to 10 years for grand theft. The sole issue in this appeal is whether his conviction should be reversed because the justice of the peace conducted his preliminary hearing in the absence of counsel.

Appellant's initial appearance in justice court was on May 11, 1976. Rule 4, Rules of Criminal Procedure, 17 A.R.S. There is no transcript of this proceeding in the record. The court minutes of the initial appearance, however, contain the statement: "Defendant requests Preliminary Hearing and states he will retain private counsel."

After his initial appearance, appellant was returned to jail. Two days later he was brought before the same justice of the peace for his preliminary hearing. (Appellant made no assertion of indigency either prior to or during the preliminary hearing). The transcript of the preliminary hearing contains the following exchange between appellant and the justice of the peace:

THE COURT: This is a preliminary hearing, docket number CR76–292, the State of Arizona versus George Thomas Canaday. The charge is: Count I, burglary in the first degree; Count II, grand theft.

Appearing on behalf of the State of Arizona is Deputy County Attorney, Mr. Hugo Zettler.

Appearing for Mr. Canaday is who, sir?

THE DEFENDANT [appellant]: I don't have no idea.

THE COURT: Are you appearing on your own behalf, Mr. Canaday?

THE DEFENDANT: I didn't know I was.

THE COURT: The date that you were arraigned, you were asked if Mr. Granville Jennings was your attorney, and you stated: Yes, that he was your attorney.

THE DEFENDANT: No. You told me he was going to represent me.

THE COURT: I told you that Mr. Jennings called this Court and stated he was going to appear in your behalf and instructed you that if Mr. Jennings didn't appear and you wished to have an attorney that you would have to apply for a Court-appointed attorney or you would have to secure other counsel.

I also told you that if you failed to have counsel the date of this hearing, that this hearing would go on with you acting on your own behalf or without counsel; is that correct, sir?

THE DEFENDANT: I don't remember it being said, no, sir.

THE COURT: Well, it was said, and we are prepared for Court today.

Mr. Zettler?

MR. ZETTLER: I'm ready.

THE COURT: Mr. Canaday, do you have a copy of the complaint, sir?

THE DEFENDANT: No, sir.

THE COURT: I give you a copy of the complaint, Mr. Canaday. Do you waive reading of that complaint, sir?

THE DEFENDANT: I don't know what you're talking about.

THE COURT: Do you wish to have the complaint read for the record?

THE DEFENDANT: No. I'll waive it.

THE COURT: You waive reading of the complaint?

THE DEFENDANT: Yeah.

THE COURT: You may proceed, Mr. Zettler.

The victim and a police officer who witnessed the crime testified at the preliminary hearing. The justice of the peace told appellant that he could cross-examine the witnesses against him, but could not testify in his own defense. Appellant conducted a limited cross-examination of the police officer, but did not cross-examine the victim. He was later given the opportunity to make "specific offers of proof" negating the state's evidence, but failed to make any such offer. Following the hearing, appellant was held to answer on the charges by the justice of peace.

On May 28, 1976, appellant's private counsel, to whom the justice of the peace had referred at the preliminary hearing, made an appearance of record by personally appearing and filing a written waiver of appellant's appearance at his arraignment. Two weeks later, that same counsel moved to withdraw, alleging that appellant was indigent and unable to pay his attorney's fees. On June 29, 1976, the motion to withdraw was granted, and the Maricopa County Public Defender was appointed to represent appellant. The first time the Public Defender talked with appellant was on the day of trial. The case was tried to a jury on October 20 and 21, 1976, and appellant was convicted on all counts. Appellant has appealed, arguing that his lack of counsel at his preliminary hearing violated his Sixth Amendment right to counsel, thus requiring his conviction to be reversed.

We agree that appellant's right to counsel was violated, but hold that, in this case, that error was harmless beyond a reasonable doubt within the meaning of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Therefore, we affirm the judgment and sentence of the trial court.

■ There is no doubt that appellant had a Sixth Amendment right to be represented by counsel at his preliminary hearing. In *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), the United States Supreme Court held that where a state's preliminary hearing is used by state prosecutors to determine whether the evidence justifies going to trial under an information or presentment to a grand jury, and where adversary procedures are customarily employed, the preliminary hearing is a "critical state" of the state's criminal process and the accused is entitled to be represented by counsel. *Id.* at 9–10, 90 S.Ct. at 2003, 26 L.Ed.2d at 397. Arizona courts have recognized that preliminary hearings under our Rules of Criminal Procedure are sufficiently similar to the preliminary hearing in *Coleman* to require that a defendant appearing at a preliminary hearing in Arizona be given a right to counsel. *State v. Crank*, 13 Ariz.App. 587, 589, 480 P.2d 8, 10 (1971). Thus, appellant's failure to be represented by counsel at his preliminary hearing unquestionably violates his right to counsel under *Coleman*. Nevertheless, the Supreme Court noted in *Coleman* that a violation of this right did not require automatic reversal. They said, "The test to be applied is whether the denial of counsel at the preliminary hearing was harmless error under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 (1967)." *Coleman v. Alabama*, 399 U.S. 1, 11, 90 S.Ct. 1999, 2004, 26 L.Ed.2d 387, 397 (1970).

■ In *Chapman v. California, supra,* the Supreme Court held that some violations of constitutional rights might be considered harmless errors. Thus, in certain cases, where the beneficiary of the error could

prove that the error was harmless beyond a reasonable doubt, an error of constitutional dimensions would not require reversal. The test which has emerged from Supreme Court cases is that an error will be considered harmless if the evidence not excluded by the error provides such overwhelming proof of guilt that the jury would have returned the same verdict in the absence of the error. *See Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284, 287 (1969); *Chapman v. California, supra. See also Bates v. Nelson,* 485 F.2d 90, 94 (9th Cir. 1973), *cert. denied, Chavez v. McCarthy,* 414 U.S. 1134, 94 S.Ct. 877, 38 L.Ed.2d 759, 415 U.S. 960, 94 S.Ct. 1491, 39 L.Ed.2d 575. *Chapman* requires that the determination of whether a constitutional error is harmless error be made according to federal law. Thus, we follow the rules derived from *Chapman, Harrington,* and *Bates, supra,* rather than the test applied in *State v. Devaney,* 18 Ariz.App. 98, 500 P.2d 629 (1972).

In determining whether appellant's lack of counsel was harmless beyond a reasonable doubt, we must look to the reasons why the Supreme Court extended Sixth Amendment protection to the preliminary hearing. *See Coleman v. Alabama,* 399 U.S. 1, 18, 90 S.Ct. 1999, 2008, 26 L.Ed.2d 387, 401 (1970) (White, J., concurring). The Supreme Court in *Coleman* found four factors significant in reaching its conclusion:

> First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his

client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail. (*Id.* at 9, 90 S.Ct. at 2003, 26 L.Ed.2d at 397).

Before we discuss these four factors in light of the facts of this case, there are some general observations which have a bearing on whether the error in this case is harmless beyond a reasonable doubt. We note that it appears in the record that appellant was actually represented by private counsel for a period of time. Although the reason for appellant's privately retained counsel's absence from the preliminary hearing does not appear in the record, his counsel did appear on appellant's behalf and represented him two weeks after the preliminary hearing. This appearance was well within the time in which a motion for a new finding of probable cause could have been filed. *See* Rule 5.5, Rules of Criminal Procedure, 17 A.R.S.[1] After appellant's private counsel was permitted to withdraw and the time for a Rule 5.5 motion had elapsed, the Public Defender appointed to represent appellant made no attempt to raise the issue either before or at the time of trial. Even on appeal, appellant makes no allegation that he was prejudiced in any way. Apparently his position is that the denial of counsel at his preliminary hearing automatically requires reversal. These observations are not determinative in themselves. They are, however, suggestive that neither the appellant nor his counsel immediately perceived any prejudice resulting from appellant's failure to be represented at his preliminary hearing.

■ Turning to the four factors which the Supreme Court found significant in *Coleman v. Alabama, supra,* we find no indication that appellant was prejudiced in

---

1. At least one court has held that where a defendant enters his plea at his arraignment without challenging his lack of counsel at his preliminary hearing, he waives that right. *Cin-*

*dle v. Page,* 452 F.2d 752, 753–54 (10th Cir. 1971). We do not find it necessary to decide this case on this issue, however.

any way. First, as Justice White stated in *Coleman* :

> The possibility that counsel would have detected preclusive flaws in the State's probable-cause showing is for all practical purposes mooted by the trial where the State produced evidence satisfying the jury of the petitioners' guilt beyond a reasonable doubt.

399 U.S. at 18, 90 S.Ct. at 2008, 26 L.Ed.2d at 402 (White, J., concurring). *See also Whitty v. State of Wisconsin*, 436 F.2d 401, 403 (7th Cir. 1970), *cert. denied*, 404 U.S. 837, 92 S.Ct. 125, 30 L.Ed.2d 69. We agree with Justice White. Appellant's conviction for grand theft and first degree burglary renders any argument he might have that a lawyer would have obtained a finding of no probable cause at the preliminary hearing moot.

▮ The next question is whether an attorney could have fashioned any "impeachment tool" from the cross-examination of the state's witnesses at the preliminary hearing. A defendant's opportunity to cross-examine witnesses at a preliminary hearing is only a limited one. *See State v. Williams*, 27 Ariz.App. 279, 283, 554 P.2d 646, 650 (1976). The United States Supreme Court expressly recognized the limited use of the preliminary hearing for impeachment purposes in *Adams v. Illinois*, 405 U.S. 278, 281–282, 92 S.Ct. 916, 919, 31 L.Ed.2d 202, 207–208 (1972), when it held that *Coleman* would not be applied retroactively. Appellant's public defender vigorously cross-examined the state's witnesses at trial. We believe that any prejudice with respect to the possible use of cross-examination testimony from the preliminary hearing as impeachment evidence at trial is wholly speculative. No claim to such evidence is made by appellant.

▮▮ The use of the preliminary hearing as a tool for discovery is also extremely limited. The preliminary hearing is at "an early stage of the prosecution when the evidence ultimately gathered by the prosecution may not be complete." *Adams v. Illinois*, 405 U.S. 278, 282, 92 S.Ct. 916, 919, 31 L.Ed.2d 202, 208 (1972). Further, nei-

ther the Arizona Rules of Criminal Procedure nor the "requirements of fairness" provide for full discovery at the preliminary hearing stage. In Arizona the preliminary hearing is limited to the determination of the probable cause issue by the justice of the peace. *State ex rel. Purcell v. City Court of City of Phoenix*, 112 Ariz. 517, 518, 543 P.2d 1146, 1147 (1975); *State ex rel. Berger v. Justice Court of N. E. Phoenix*, 112 Ariz. 24, 25, 536 P.2d 1042, 1043 (1975). Appellant lost no discovery rights because of his lack of counsel at the preliminary hearing. This is true despite Rule 15.-3(a)(2), Rules of Criminal Procedure, which specifically excludes from a defendant's right to depose witnesses persons who testified at the preliminary hearing. Here appellant cross-examined the police officer who testified at the preliminary hearing. Rule 15.3(a)(2), however, did not eliminate all opportunity to depose the police officer. In discussing witnesses excluded from depositions under Rule 15.3(a)(2), the Comment states:

> However, either party may seek a voluntary interview with such a witness (and counsel may not ethically advise a witness not to cooperate with an opponent) and in exceptional cases, additional discovery may be sought from such witnesses under the terms of Rules 15.1(e) and 15.2(f).

Where the witness who testified at the preliminary hearing was a police officer, it seems that appellant's attorney would have had little difficulty in obtaining a voluntary interview, if he so desired. Over three months elapsed between the appointment of the public defender and the time of trial. The defendant in this case thus had full opportunity to engage in any discovery desired. On the record before us, we can conceive of no possible prejudice to appellant's discovery rights resulting from his lack of counsel at his preliminary hearing, and none is shown or claimed.

The fourth factor found significant by the Supreme Court has no application to this case. There is no suggestion in the record that a psychiatric examination would

have benefited appellant in any way. His defense was based on misidentification, not mental impairment. Finally appellant's demonstration of indigency makes discussion of bail moot.

In conclusion, we find no evidence in the record that appellant was prejudiced in any way by his lack of counsel at his preliminary hearing. The evidence to the jury fully supports its determination of guilt on both charges. Absent some allegation of prejudice by appellant or some independent discovery of actual prejudice by the court, in our opinion the failure to have counsel present was thus harmless error beyond a reasonable doubt. We agree with the comments of Mr. Justice Harlan in *Coleman*:

> In my opinion mere speculation that defense counsel might have been able to do better at trial had he been present at the preliminary hearing should not suffice to vitiate a conviction.

*Coleman v. California*, 399 U.S. 1, 20–21, 90 S.Ct. 1999, 2009, 26 L.Ed.2d 387, 403 (1970) (Harlan, J., concurring in part, dissenting in part).

Affirmed.

WREN, Judge, specially concurring.

I am in total agreement that *Coleman v. Alabama, supra,* fully supports the decision reached here by Judge Eubank. However, in view of the dissent and its focus on the principle of discovery, I would like to address more completely the nature of a preliminary hearing under the new Arizona Rules of Criminal Procedure.

As flatly stated by our Supreme Court in *State v. Bojorquez,* 111 Ariz. 549 at 553, 535 P.2d 6 at 10 (1975): "The purpose of a preliminary examination is not to grant the defendant an opportunity for discovery but to determine probable cause to hold the defendant to answer." (Citations omitted.) "Any discovery that occurs at a preliminary hearing is incidental to that proceeding and is not a right of the defendant."

Rule 5.3 and Comment thereunder articulates that the whole concept of the Rule is to focus on the issue of probable cause and to metamorphose what had been a long standing "discovery" device under the 1956 Rules of Criminal Procedure.

This concept of course lends great credence to the observation of Justice White in *Coleman* that the assessment of harmless error "cannot ignore the fact that petitioners have been tried and found guilty by a jury." 399 U.S. at 18, 90 S.Ct. at 2008, 26 L.Ed.2d at 401.

SCHROEDER, Judge, dissenting:

After correctly determining that the defendant was denied his constitutional right to counsel at a crucial stage of the proceedings, the majority concludes incorrectly, in my opinion, that the error was harmless within the standards set down by the United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

The majority opinion in effect stands *Chapman v. California* on its head by requiring that the appellant demonstrate specific prejudice as a result of his lack of counsel at the preliminary hearing. Justice Black's opinion in *Chapman v. California* categorically rejected that position and held that "[c]ertainly error, constitutional error . . . casts on someone other than the person prejudiced by it a burden to show that it was harmless." *Chapman v. California*, 386 U.S. at 24, 87 S.Ct. at 828. In this case, the state has not even attempted to argue that the lack of counsel was harmless error, and it does not even examine the factors set forth in *Coleman* as appropriate in determining whether denial of counsel at the preliminary hearing was harmless.

The majority's reasoning is especially strained in this case since the lawyer initially representing the appellant never appeared with the appellant in court,[2] and this

---

2. His only appearance of record prior to withdrawal was a written waiver of the defendant's right to appear personally at arraignment.

record does not indicate that the appellant ever met face to face with any lawyer representing him until the day of trial.

Moreover, when this record is analyzed in the light of the advantages of counsel at the preliminary hearing as discussed in *Coleman*, it is impossible to conclude that the defendant was not materially disadvantaged. Our Arizona rules indicate that the preliminary hearing should be a discovery device. Thus, once a witness appears at the preliminary hearing, he cannot later be deposed by the defense. Ariz.R.Civ.P., 15.-3(a)(2) and comment to Rule 5.3(a). While the majority struggles to find alternatives in the form of a possible interview with witnesses, and possible application for exceptional relief by court order as suggested in the comment to Rule 15.3(a)(2), I cannot view such alternatives as adequate substitutes for sworn cross examination by trained counsel of key state witnesses. The loss of that opportunity is particularly grave in a case such as this where the state's case rested on identification testimony, and where, at trial, a principal strategy was to cast doubt on that identification through cross examination.[3]

As the United States Supreme Court's opinion in *Coleman* points out, counsel at the preliminary hearing can also make a record or raise questions concerning other factors not directly related to probable cause. The Supreme Court gives as examples bail and psychiatric examination. In this regard the majority wholly misconstrues *Coleman*. The United States Supreme Court mentioned these simply as il-lustrative examples. We do not know what subjects might have been raised at this preliminary hearing but it is clear with respect to bail, at least, that the defendant at the time of preliminary hearing was being held in custody, was unable to post the substantial bond previously set, and lacked representation to question the bond.

Finally, the majority improperly suggests that the test of harmless error in this case should be whether the proof of guilt at trial was overwhelming. Such a test has been applied when the constitutional error relates to the improper proceedings at trial. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *State v. Magby*, 113 Ariz. 345, 554 P.2d 1272 (1976); *State v. Reese*, 26 Ariz.App. 251, 547 P.2d 522 (1976). In such cases the error occurs during the trial and its effect can be weighed in the context of the trial proceedings.

The error here is lack of counsel at a crucial preliminary stage materially relating to the preparation of the defense itself. The notion that the right to counsel diminishes as the strength of the state's case increases is wholly incompatible with our system of justice.

For these reasons, I must respectfully dissent.

3. The defendant at the preliminary hearing did attempt to cross examine one of the state's witnesses and made no attempt to cross examine the other. His cross examination was ineffectual, as illustrated by the following colloquy:

"Q. Where was you located when you seen me?
A. I was about 70 feet north.
Q. And the parking lot is dark?
A. Where I was at, yes.
Q. And where I was at?
A. Not as dark.
Q. But you could make positive identification?
A. Yes, sir.
Q. Do you remember what I was wearing?
A. You had on a brown felt cowboy hat. The shirt, I believe, was white with some sort of stripes on it, long-sleeved, rolled up to the elbows.
Q. Pardon?
A. I believe it was a long-sleeved, rolled up to the elbows.
Q. And pants?
A. Pardon?
Q. What color was the pants?
A. The pants?
Q. Yes, sir.
A. I believe denim. I'm not sure.
DEFENDANT CANADY: I have no other questions."