# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GARY PATRICK LEWIS,

Defendant-Appellant.

FOR PUBLICATION
November 2, 2017
9:00 a.m.

No. 325782
Wayne Circuit Court
LC No. 14-006454-FH

ON REMAND

Before: TALBOT, C.J., and MURRAY and SERVITTO, JJ.

PER CURIAM.

Defendant was convicted by a jury of four counts of third-degree arson, MCL 750.74, and one count of second-degree arson, MCL 750.73(1). The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 17 to 30 years' imprisonment for each conviction. On appeal, we vacated defendant's convictions and remanded for a new trial on the basis that the denial of counsel at defendant's preliminary examination amounted to a structural error requiring automatic reversal. *People v Lewis*, unpublished opinion per curiam of the Court of Appeals, issued July 21, 2016 (Docket No. 325782), pp 3, 10, vacated in part and remanded ___ Mich ___ (2017). However, the Michigan Supreme Court reversed our judgment and remanded for application of the harmless-error standard. *People v Lewis*, ___ Mich ___, ___; ___ NW2d ___ (2017) (Docket No. 154396); slip op at 8, 11. For the reasons stated herein, we affirm defendant's convictions, holding that any error resulting from the denial of counsel at his preliminary examination was harmless, but remand to the trial court for a determination regarding whether, in light of *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), it would have imposed a materially different sentence.

## I. FACTS AND PROCEDURE

In our earlier opinion, we stated the relevant facts as follows:

At the start of defendant's preliminary examination, the trial court asked defendant to state his full name on the record. In response, defendant stated, "I'm not talking. I don't have no attorney. This man disrespecting me. You all violating my rights. I'm through with it. I'm through with it." The trial court then stated that it had appointed lawyers for defendant on multiple occasions, that

-1-

defendant had indicated his displeasure with each of the lawyers that were appointed, and that defendant had in fact grieved each of the prior counsel.

In light of this, the trial court found that defendant had "elected that he would prefer not to have a lawyer to represent him and we're going to proceed." In response, defendant stated, "I never said that." The trial court then reiterated that the preliminary examination would proceed and that defendant's former trial counsel, Brian Scherer, would act as stand-by counsel.

As the prosecution called Mollison Folson to testify, defendant stated, "I'm not going to participate in this legal bullshit." The court then warned defendant that he would be expelled from the courtroom if he continued his outburst. Defendant continued to interrupt the court while using profane language, so the trial court expelled defendant from the courtroom. After defendant was removed, the trial court told Scherer that he was free to leave as well. The court then continued with the preliminary examination, and after hearing testimony from six witnesses, the trial court held that there was sufficient probable cause to bind defendant over for trial. [*Lewis*, unpub op at 1-2.]

As provided above, defendant was subsequently convicted of four counts of third-degree arson and one count of second-degree arson following a jury trial, and appealed as of right. Bound by Michigan caselaw holding that the complete deprivation of counsel at a critical stage of a criminal proceeding requires automatic reversal, we concluded in our prior opinion that because defendant was denied counsel at his preliminary examination, a critical stage of the proceedings, reversal of his convictions was required. *Lewis*, unpub op at 3, 10. However, the two-judge majority in that opinion, citing the United States Supreme Court's decision in *Coleman v Alabama*, 399 US 1, 11; 90 S Ct 1999; 26 L Ed 2d 387 (1970), expressed the belief that the deprivation of counsel at a critical stage of a criminal proceeding should not always require reversal, and that harmless-error review should apply where the deprivation does not affect the entire proceedings. *Id*. at 4-5.

The Supreme Court agreed, relying on *Coleman* to reverse our judgment and hold that a claim of error based on the deprivation of counsel at a preliminary examination is subject to harmless-error review. *Lewis*, ___ Mich at ___; slip op at 7-8, 11.[1] It then directed us, on remand, to consider "the substantive criteria or the procedural framework that should attend" harmless-error review, and apply that standard to the facts at issue. *Id*. at ___; slip op at 10-11.

---

[1] Specifically, our Supreme Court stated: "Although it is short on explanation for its remedy, the [*Coleman*] Court plainly held that the deprivation of counsel at a preliminary examination is subject to harmless-error review under the federal Constitution. Accordingly, we apply that decision . . . ." *Lewis*, ___ Mich at ___; slip op at 7 (citations omitted).

-2-

## II.  HARMLESS-ERROR REVIEW

With regard to the procedural framework that should be applied, for preserved[2] non-structural constitutional errors, the prosecution must prove that the error was harmless beyond a reasonable doubt.  *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).  However, determining the substantive criteria that should attend harmless-error review under these circumstances – where a defendant has been denied counsel at a preliminary examination – is more difficult.  The Supreme Court admitted that it was uncertain "about just how a court is to evaluate the effect of this error on a verdict," *Lewis*, ___ Mich at ___; slip op at 8, but provided "guideposts," stating:

> At each extreme, we know what is not permitted.  At one end, a court may not simply presume, without more, that the deprivation of counsel at a preliminary examination must have caused the defendant harm.  Although consistent with the presumption accorded to the complete denial of counsel at some other stages of a criminal proceeding, such an approach would be treating the error as structural – a result foreclosed by *Coleman*.  Neither, however, may we presume the opposite. . . . *Coleman* does not permit us to presume that a defendant, who was ultimately convicted at an otherwise fair trial, suffered no harm from the absence of counsel at his preliminary examination.  And that is true even if no evidence from the preliminary examination was used at trial, and even if defendant waived no rights or defenses because of the absence of counsel at the preliminary examination. [*Id*. at ___; slip op at 9 (citations omitted).]

Thus, contrary to the dicta in our earlier opinion, *Lewis*, unpub op at 3-5, we cannot conclude that the error here was harmless simply because defense counsel conceded that no evidence from the preliminary examination was used at trial, and no rights or defenses were waived by defendant's lack of participation in the preliminary examination.

The United States Supreme Court's decision in *Coleman* provides further guidance.  There, the Court identified four reasons that having counsel at a preliminary hearing may be essential to protecting a defendant's rights:

> First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over.  Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial.  Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at

---

[2]  In our prior opinion, we concluded that, despite defendant's conduct at the preliminary examination, defendant did not forfeit his argument regarding the denial of counsel because the prosecution failed to raise the issue on appeal.  *Lewis*, unpub op at 3 n 4.

the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail. [*Coleman*, 399 US at 9.]

These factors have been used by other courts to determine whether the deprivation of counsel at a preliminary hearing amounted to harmless error. See, e.g., *State v Canaday*, 117 Ariz 572, 575-576; 574 P2d 60 (1977); *State v Brown*, 279 Conn 493, 510; 903 A2d 169 (2006);[3] *People v Eddington*, 77 Mich App 177, 190-191; 258 NW2d 183 (1977).

Additionally, in her concurring opinion in this case, Justice McCormack opined that counsel's presence at the preliminary examination may be essential to negotiating plea deals. *Lewis*, ___ Mich at ___ (MCCORMACK, J., concurring); slip op at 2. And defendant suggests, in his brief on remand,[4] that counsel could discover the need to file pretrial motions at a preliminary examination. Based on the foregoing, we conclude that to determine whether the denial of counsel at a preliminary examination amounts to harmless error, courts must consider the factors discussed in *Coleman*, as well as any other factors relevant to the particular case, including the lost opportunity to negotiate a plea deal, and any prejudice resulting from the failure to file pretrial motions.

### III. APPLICATION OF HARMLESS-ERROR REVIEW TO THE FACTS

Turning to the specific facts at issue and the arguments raised by defendant on remand, we hold that any error resulting from the denial of counsel at defendant's preliminary examination was harmless beyond a reasonable doubt.

Looking to the first *Coleman* factor, defendant appears to argue that counsel could have objected to his bindover on the basis that no evidence was presented regarding the "condition of the buildings" he was accused of damaging, or that the house on Russell Street qualified as a dwelling. However, a review of the preliminary examination transcript and the relevant law makes clear that no such arguments by counsel would have altered the court's decision to bind defendant over for trial. Defendant fails to explain what he means by the "condition of the buildings," but assuming that he is referring to the element of both second- and third-degree arson requiring that a defendant burn, damage, or destroy buildings or dwellings by fire or explosives to be convicted, MCL 750.73(1); MCL 750.74(1)(a), the prosecution presented testimony at the preliminary examination regarding fires at each address. Further, defendant was convicted of third-degree arson for 20527 Russell Street, which in contrast to second-degree

---

[3] We recognize that caselaw from foreign jurisdictions is not precedentially binding in Michigan, but it may be considered persuasive. *People v Blanton*, 317 Mich App 107, 122 n 6; 894 NW2d 613 (2016).

[4] On remand, this Court granted defendant's motion to file a supplemental brief. *People v Lewis*, unpublished order of the Court of Appeals, entered August 28, 2017 (Docket No. 325782).

arson (requiring that damage be done to a dwelling for conviction), requires only that damage be done to buildings or structures.[5]

Moreover, this Court has held that "the presentation of sufficient evidence to convict at trial renders any erroneous bindover decision harmless." *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010). Although "*Coleman* does not permit us to presume that a defendant, who was ultimately convicted at an otherwise fair trial, suffered no harm from the absence of counsel at his preliminary examination[,]" *Lewis*, ___ Mich at ___; slip op at 9, it is relevant to our consideration of the first *Coleman* factor. Given that defendant was convicted at trial on the basis of sufficient evidence, the possibility that counsel could have detected preclusive flaws in the prosecution's probable-cause showing is moot.

Defendant's arguments with regard to the second *Coleman* factor are no more persuasive. He asserts that he had no opportunity for cross-examination at the preliminary examination because the court precluded his participation, and that as a result, witnesses were never asked to provide a description of the person they saw committing the crimes, making impeachment impossible. But "[a] defendant's opportunity to cross-examine witnesses at a preliminary hearing is only a limited one." *Canaday*, 117 Ariz at 576. See also *Adams v Illinois*, 405 US 278, 282; 92 S Ct 916; 31 L Ed 2d 202 (1972) (recognizing limitations on the use of preliminary hearings for discovery and impeachment purposes). And although defendant was unrepresented at the preliminary examination, he was appointed new counsel at the next hearing, who it appears was given a transcript of the preliminary examination. This newly-appointed counsel could have used the transcript for impeachment at trial. See *Thomas v Kemp*, 796 F2d 1322, 1327 (CA 11, 1986) (concluding that the absence of counsel at a preliminary hearing was harmless error where, *inter alia*, the defendant's "counsel had access to the transcript of the preliminary hearing because he used the transcript to impeach the testimony of the State's main witnesses").

Further, defendant's argument that testimony about the perpetrator's identity at the preliminary examination would have been useful at trial for impeachment purposes, is purely speculative. Defendant references inconsistencies between the witnesses' descriptions at trial, but the jury heard this testimony, as well as defense counsel's closing argument calling attention to the inconsistencies, and still voted to convict. See *Ditch v Grace*, 479 F3d 249, 257 (CA 3, 2007) (concluding "that the denial of counsel ultimately did not have a substantial or injurious effect on the jury's ultimate verdict" because "[t]here was substantial evidence of guilt, and the jury was well-apprised of the weaknesses in [the witness's] identification testimony[,]" despite the fact that trained counsel could have conducted a cross-examination of the witness at the

---

[5] Specifically, MCL 750.74 provides, in pertinent part:

(1) Except as provided in sections 72 and 73, a person who does any of the following is guilty of third degree arson:

(a) Willfully or maliciously burns, damages, or destroys by fire or explosive any building or structure, or its contents, regardless of whether it is occupied, unoccupied, or vacant at the time of the fire or explosion.

preliminary hearing to expose weaknesses in his testimony and for use as an impeachment tool at trial).[6]

With respect to the third *Coleman* factor, defendant argues that his inability to cross-examine witnesses at the preliminary examination hampered his pretrial discovery, but fails to identify any evidence used at trial that counsel could have discovered by virtue of participation in the preliminary examination. And neither the fourth *Coleman* factor, nor the additional factor identified by Justice McCormack, affect our determination that the deprivation of counsel at defendant's preliminary examination was harmless error. Defendant does not argue that counsel could have requested an early psychiatric evaluation, and the record establishes that he was referred to the Forensic Center before the preliminary examination. Further, defendant lost no opportunity to negotiate a plea deal because he lacked counsel. At the August 8, 2014 hearing, the prosecutor stated that the plea deal offered to defendant would be available until the final conference.

Defendant's additional arguments related to the specific circumstances of his case also fail. He asserts first that he was denied the defense of misidentification because counsel could have moved for a corporeal lineup at the preliminary examination based on the fact that Folson had identified someone other than defendant in a photographic lineup. Folson was not, however, the only witness who identified defendant at the preliminary examination. Lieutenant Jamel Mayers testified that he apprehended defendant, who matched the description provided by Folson, and Lieutenant Daniel Richardson testified that he also apprehended defendant, who matched the description provided by Ronnie Blanton. Moreover, defendant merely speculates that the result of a corporeal lineup would have been favorable to his defense. But as we concluded in our earlier opinion, the use of a photographic lineup instead of a corporeal lineup did not affect defendant's substantial rights. *Lewis*, unpub op at 6-7.

Defendant also argues that counsel could have questioned the officers about the lighters and moved to suppress them if they were lost, asserting that the lighters were incapable of starting a fire. However, he fails to explain what such questioning would have revealed, and it is unclear how or why counsel would have moved to suppress lost items. Moreover, counsel appointed for defendant at the next hearing could have filed a motion to suppress such evidence before trial, but chose not to do so. And regardless, no prejudice could have resulted from the failure to suppress the lighters because they were not introduced at trial. Instead, photographs of the lighters were introduced, and defendant does not argue that the photographs were improperly admitted.

We note further that, as in *Canaday*, defendant was appointed new counsel at the hearing after the preliminary examination. Neither his newly appointed counsel, nor his counsel at trial, ever argued that defendant was prejudiced by the denial of counsel at the preliminary examination. This suggests that neither defendant, nor his attorneys, "immediately perceived

---

[6] We note that, unlike in *Ditch*, it cannot be said that the evidence of guilt at trial was substantial. The only evidence linking defendant to the crimes, other than the identifications, were the lighters found in his pocket. Nonetheless, the jury found defendant guilty.

any prejudice" stemming from defendant's failure to be represented at the preliminary examination. *Canaday*, 117 Ariz at 575.

Based on the foregoing, we hold that any error resulting from the denial of counsel at defendant's preliminary examination was harmless beyond a reasonable doubt. Accordingly, we affirm his convictions.

## IV. SENTENCING

Because we conclude that the deprivation of counsel at the preliminary examination was harmless error, we must address the sentencing issue raised by defendant on appeal. See *Lewis*, ___ Mich at ___; slip op at 11 ("If the Court of Appeals concludes that the error was harmless, it must also address the sentencing issue raised in defendant's brief in that Court."). Prior record variable (PRV) 5 was scored correctly, but defendant was sentenced before our Supreme Court decided *Lockridge*, and the facts used to score offense variable (OV) 9 were not found beyond a reasonable doubt by the jury or admitted by defendant. Thus, the mandatory application of the guidelines at sentencing violated defendant's Sixth Amendment rights. And because the scoring affected the sentencing guidelines range, defendant is entitled to a remand to the trial court for a determination regarding whether it would have imposed a materially different sentence but for the unconstitutional restraint on its sentencing discretion. See *Lockridge*, 498 Mich at 395-397, 399.

## V. CONCLUSION

We affirm defendant's convictions, holding that any error resulting from the denial of counsel at his preliminary examination was harmless, but remand to the trial court for a determination regarding whether it would have imposed a materially different sentence. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Deborah A. Servitto